IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| HILDA GONZALEZ GARZA AND ROSBELL BARRERA, <br> *Plaintiffs,* | § <br> § <br> § <br> § | |
| v. | § <br> § | CIVIL ACTION NO. 7:18-CV-00046 |
| STARR COUNTY, TEXAS; OMAR ESCOBAR, in his official capacity as District Attorney for the 229th Judicial District; VICTOR CANALES JR., in his official capacity as County Attorney for Starr County; ELOY VERA, in his official capacity as County Judge for Starr County; JAIME ALVAREZ, in his official capacity as Starr County Commissioner for Precinct 1; RAUL PEÑA, III, in his official capacity as Starr County Commissioner for Precinct 2; ELOY GARZA, in his official capacity as Starr County Commissioner for Precinct 3; RUBEN D. SAENZ, in his official capacity for Starr County Commissioner for Precinct 4; RENE "ORTA" FUENTES, in his official capacity as Sheriff for Starr County. <br> *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COME NOW, Defendants, STARR COUNTY, TEXAS; OMAR ESCOBAR, in his official capacity as District Attorney for the 229th Judicial District; VICTOR CANALES JR., in his official capacity as County Attorney for Starr County; ELOY VERA, in his official capacity as County Judge for  Starr County; JAIME ALVAREZ, in his official capacity as Starr County Commissioner for Precinct 1; RAUL PEÑA, III, in his official capacity as Starr County Commissioner for Precinct 2; ELOY GARZA, in his official capacity as Starr County Commissioner for Precinct 3; RUBEN D. SAENZ, in his official capacity for Starr County Commissioner for Precinct 4; RENE "ORTA"

FUENTES, in his official capacity as Sheriff for Starr County, and file this their Response to Plaintiffs' Emergency Application for Temporary Restraining Order and respectfully show unto the Court the following:

## I. FACTS OF THE CASE

1. The Plaintiffs have filed an Original Complaint on the very issues contained in their Application.  They allege that the Order of the Commissioners' Court of Starr County violates the First Amendment.  In the Application for Temporary Restraining Order they allege they intend to violate that Order and are in fear of arrest.

2. Plaintiffs are complaining about the incorrect legislation.  The Order of which they complain was subsumed by the Use of Starr County Facilities and Property Policy properly enacted by the Commissioners' Court on February 12, 2018.  The policy does not create or diminish any citizen's right to use property under the ownership and control of the County.  It creates a procedure by which a person wishing to use County property for a proper purpose may apply for a permit to use such property.

3. The Use of Starr County Facilities and Property Policy [hereinafter "Use Policy"]  sets forth regulations on how County property may be used and forbids improper uses.  It also designates the parking areas around County property to be just that, parking areas.  It describes what may or may not be a designated parking area.  It also describes the type of vehicles that may be permitted to park in the designated areas.  Its policy prohibits the parking or placement of some vehicles like recreational vehicles and other items that are arguably not even vehicles, such as BBQ pits, chairs, tents from the parking zone. (Dkt. 4-3 #11).  Furthermore, those vehicles or items are not protected by §61.003 Tex. Elec. Code as they are not within the definition of electioneering.

4. The Use Policy ALLOWS political signs attached to the vehicle such as bumper stickers in accordance with the Texas Election Code.  (Dkt. 4-3 #11(vi))

5. The Use Policy's Section 13, "Use of Common Areas," restricts the use of the areas that are not Parking Zones. Certain items are prohibited on the common areas. (Dkt. 4-3)  However,

should a person want to use a part of one of the County's common areas, they may file an application for a permit for the use.  In the application the person must describe the activity which they wish to use the common area for.  The Commissioners' Court will decide if the permit will be granted.  If time does not permit the entire Court to approve the application, the County Judge has the authority under certain circumstances to approve the permit.  Plaintiffs only have to file one.  To date neither Plaintiff has applied for a permit for use of County property.  Neither has been denied use of County property.  Neither would be subject to any action if they do not violate this Policy.

6. Nonetheless, trailers, BBQ pits, chairs, ice chests, tents and similar items are not permitted in the common areas.

7. The regulations set forth in this Use Policy applies to all persons of Starr County at all times.  It does not apply only during voting periods.

8. Plaintiffs have taken aim at the Order regarding electioneering because it reiterates some of the policies set forth herein.  If the parking lot of any County property extends beyond 100 feet, as per Tex. Elec. Code §61.003,  it may still only be used for parking as per this policy, not the Order Plaintiffs are complaining about.

## II. ARGUMENT

9. A preliminary injunction is an "extraordinary and drastic remedy" available only upon a clear showing that the plaintiff is entitled to such relief. *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A plaintiff seeking a preliminary injunction must establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction [is] not granted; (3) that their substantial injury outweigh[s] the threatened harm to the party whom they seek to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest." *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012) (citation omitted). "[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F3d 570, 574 (5th Cir. 2012) (internal

quotations omitted). The decision to grant a preliminary injunction "is the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

**A. Plaintiffs are unlikely to succeed on the merits**

10. Plaintiffs have not shown they are entitled to the relief they seek. First, they cannot show this matter is ripe for judicial review. Second, even if the Court decided this matter is justiciable, Plaintiffs cannot show that the neutral-content <u>Use Policy</u> is unconstitutional or in violation of the Texas Election Code.

**a. Ripeness**

11. The doctrine of ripeness is designed, in part, "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized." *Abbott Laboratories v. Gardner*, 387 U.S. 136 148-49 (1967) *quoted in Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). The Court:

> should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical. The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.

*New Orleans Public Service, Inc. v. Council of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987) (internal citations omitted).

12. The <u>Use Policy</u> for County buildings allow Plaintiffs to use common areas. Plaintiffs must simply apply for a permit. Plaintiffs have not applied for permits, and, thus, no permits have been denied. Unless they can first show that County has denied Plaintiffs access to common areas, this case is not yet ripe for review.

**b. Constitutionality of the Use Policy**

13. When considering enjoining the enforcement of a statute, ordinance or policy enacted by a democratically elected body, "every reasonable construction must be resorted to in order to save [it] from unconstitutionality."*National Federation of Independent Business v. Sebelius*, 567 U.S.

519, 563 (2012) *quoted in Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 895 (5th Cir. 2012). Furthermore, the interpretation of those charged with enforcing an ordinance and policy must be accorded some meaningful weight. *Cf. Andrade*, 488 F. App'x at 895; *see Bellotti v. Baird*, 428 U.S. 132, 143 (1976).

14. Despite Plaintiffs' miopic view of on the County's policy on the use of property, the Court should consider the entirety of the County's policy concerning the use of property. This requires the focus of the inquiry in this case to be on the Use Policy that subsumed the Order which is the basis of Plaintiffs' complaint. In fact, the Use Policy clearly states in Section 14, "Cumulative," that "[a]ll policies of the County of Starr, Texas, adopted or un-adopted, in conflict with the provisions of this policy are hereby repealed . . . ." (Dkt. 4-3).

15. In scrutinizing the Use Policy in this case, the Court must first determine the predominate purpose in enacting regulations involving the freedom of speech. "If [ ] the government's predominate purpose is unrelated to the suppression of expression, such that the regulation can be justified without reference to the content of the regulated speech, then intermediate scrutiny applies." *Fantasy Ranch, Inc. v. City of Arlington*, 459 F.3d 546, 554 (5th Cir. 2006) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* In this case, the County decided to adopt the Use Policy to address the maintenance and safety concerns that arise from the use of County facilities at all times, regardless of polling stations and voting periods. The County's Use Policy regulates the use of County property without reference to the content of speech; it is neutral concerning any speaker's point of view. The Use Policy is a neutral policy of general applicability which allows the County to develop, maintain and control its facilities to support County operations and services, in addition to safeguarding the safety

of employees and citizens, and mitigating blight, distraction and nuisance. No court has found that these are not compelling government interests. Therefore, intermediate scrutiny applies.

16. Under intermediate scrutiny, "[1] the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided [2] the restrictions are justified without reference to the content of the regulated speech, [3] that they are narrowly tailored to serve a significant governmental interest, and [4] that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)) (internal quotations omitted). Here, 1) the County's Use Policy regulates activities on County property, 2) including but not limited to electioneering, 3) for the safety of pedestrians in parking zones, to allow unimpeded access to County buildings and services, and to maintain County property free from blight and nuisance, and 4) encourages the use of common areas through a permit—which Plaintiffs have not sought.

17. Moreover, "the First Amendment does not guarantee access to government property simply because it is owned or controlled by the government." *United States Postal Service v. Greenburgh Civic Assns.*, 453 U.S. 114, 129 (1981). Rather, the "existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 44 (1983). Plaintiffs argue that the restrictions on speech on all county property should be treated the same, but there is no precedent for such a position.

18. Public property which is not by tradition or designation a forum for public communication may be reserved by the State "for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Education Assn.*, 460 U.S. at 46. Public forums include those places "which by long tradition or by government fiat have been devoted to assembly and debate," such as parks, streets, and sidewalks. *Id.* at 45; *cf. Members of City Council*

*v. Taxpayers for Vincent*, 466 U.S. 789, 814 (1984). "[O]n government property that has not been made a public forum, not all speech is equally situated, and the State may draw distinctions which relate to the special purpose for which the property is used." *Id.* at 54.

19. In this case, Plaintiffs have specifically identified five properties of "concern": Starr County Courthouse, Starr County Annex, El Cenizo Park, La Rosita Community Center, and La Victoria Community Center (or Zarate Park). The Use Policy allows Plaintiffs to use the common areas of the El Cenizo Park, La Rosita Community Center, and La Victoria Community Center, they are restricted, however, on the use of their parking lots for anything other than parking motor vehicles; there are no restrictions of speech in the public fora, *i.e.* parks and community centers, there are only safety restrictions in the use of non-public fora, *i.e.* parking lots. The use of common areas at parks and community centers may be restricted by the Texas Election Code's 100-foot buffer zone if they are used as polling places, but these are not restrictions under the Use Policy. The Starr County Annex and the Starr County Courthouse, have no outdoor common areas that may be used by Plaintiffs during the voting period, not because the Use Policy denies such access, but because the entire areas outside the Texas Election Code's 100-foot buffer zones are parking areas. This case can be summed up as a dispute over the use of parking lots, whose use has been properly restricted for the sole purpose of parking under the Use Policy.

### c. The Use Policy in light of the Texas Election Code

20. When County buildings are used as a polling place, the Texas Election Code prohibits electioneering within 100 feet of the entrance of the buildings. In this case, the County properties that will be used as poling places are El Cenizo Park, La Rosita Community Center, La Victoria Community Center (or Zarate Park) and Starr County Courthouse. The Use Policy restricts the use of these properties outside the 100-foot buffer zone by prohibiting the use of parking lots at these locations, nothing more. *See* (Ex. A). Plaintiffs, pursuant to the Use Policy, may seek permits for any common area outside the 100-foot buffer zone such as the grassy areas on the north and northeast of El Cenizo Park, or the grassy areas and canopies on the northeast and west of La Victoria

Community Center. No common areas outside the 100-foot buffer zone exist at the La Rosita Community Center and the Starr County Courthouse, but the County has no obligation to create these areas; it must simply comply with the Texas Election Code's buffer zone and look after the operation of its properties by protecting the safe ingress and egress of citizens to parking lots, and providing ample opportunity for citizens to find adequate parking.

21. Pursuant to Section 61.003(a-1) of the Texas Election Code, the County has the authority to "enact reasonable regulations concerning the time, place, and manner of electioneering." The County has decided to do so by prohibiting all activity in County parking lots that does not involve the parking of motor vehicles. The Texas Secretary of State's Election Advisory Opinion No. 2017-14 supports such regulation by providing as an example the authority to "prohibit[] electioneering on sidewalks or driveways to keep them clear for pedestrians and traffic." *See* (Ex. B). The Use Policy's prohibition of parking lot use for something other than parking motor vehicles follows the same logic: "to keep them clear for pedestrians and traffic."

**d. The County acted within its authority, not *ultra vires***

22. Section 61.003(a-1) of the Texas Election Code specifically allows the County to "enact reasonable regulations concerning the time, place, and manner of electioneering." The County's elected officials have enacted regulations pursuant to this authority. Section 61.003 does not provide for penalties regarding violations of the regulations enacted by the County pursuant to its authority, therefore, the County has the authority to adopt the penalties necessary for the enforcement of such regulations.

**B. There is no threat of irreparable injury**

23. As stated above, the Use Policy gives citizens, including Plaintiffs, the opportunity to use common areas on County properties. Plaintiffs simply have to apply for a permit. Moreover, despite Plaintiffs' assertion that they can be arrested for parking vehicles with campaign bumper stickers, the Use Policy specifically allows: "Vehicles may display political signs attached to the vehicles in accordance with the Texas Election Code." Contrary to Plaintiffs' assertion, the County's Use Policy

does not hinder civic participation and political engagement.

24. Thus, to date neither Plaintiff has suffered any damage or injury. The Plaintiffs are presenting as evidence hearsay conversations, emails that all discuss the Order. Plaintiffs have not asked these same persons if a County has the right to regulate its parking zones and for no other purpose. That is the issue before this Court.

## C. An injunction stops the County from protecting the public

25. The County has a duty to preserve the general health and welfare of citizens, and obligation to enact regulations to that end. The County has established a policy to address the maintenance and safety concerns that arise from the use of County property. To enjoin the enforcement of this policy would harm the citizens of Starr County and disserve the public interest. Several Texas jurisdictions have found the regulation of use of public property is in the best interest of its citizens, and Starr County is just one among them. *See* Sec. 10.52, Code of Ordinances of the City of Allen ("It is an offense for any person to engage in electioneering on driveways, parking areas, on medians within parking areas, or driveways on the premises of a polling location."); Sec. 19-106, Code of Ordinances of the City of Cedar Hill ("It is an offense for any person to engage in electioneering or loitering in or on driveways, parking areas, on medians within parking areas, or driveways on the premises of public property used as a polling location, or outside of designated electioneering areas on public property used as a polling location."); Sec. 70-43, Code of Ordinances of the City of Kerrville ("It is unlawful for a person to engage in electioneering on driveways at a polling place."); Sec. 13-192, Code of Ordinances of the City of Richardson ("It is an offense for any person to engage in electioneering on driveways, parking areas, on medians within parking areas, or driveways on the premises of a polling location."); Sec. 74-173, Code of Ordinances of the City of Wylie ("It is an offense for any person to engage in electioneering on driveways, parking areas, on medians within parking areas, or driveways on the premises of a polling location."). Considering that there has been no harm to Plaintiffs, the risks to the citizens of Starr County weigh heavily against an injunction.

## III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants, STARR COUNTY, TEXAS; OMAR ESCOBAR, in his official capacity as District Attorney for the 229th Judicial District; VICTOR CANALES JR., in his official capacity as County Attorney for Starr County; ELOY VERA, in his official capacity as County Judge for Starr County; JAIME ALVAREZ, in his official capacity as Starr County Commissioner for Precinct 1; RAUL PEÑA, III, in his official capacity as Starr County Commissioner for Precinct 2; ELOY GARZA, in his official capacity as Starr County Commissioner for Precinct 3; RUBEN D. SAENZ, in his official capacity for Starr County Commissioner for Precinct 4; RENE "ORTA" FUENTES, in his official capacity as Sheriff for Starr County, pray that this Court deny Plaintiffs' request for injunctive relief, dismiss Defendants, order that Defendants recover all costs incurred herein, and grant that Defendants have such other and further relief, at law or in equity, to which they may show themselves to be justly entitled.

Respectfully submitted,


By: __/s/ Eileen M. Leeds_____
      Eileen M. Leeds
      State Bar No. 00791093
      USDC Adm. No. 16799
      Email: eleeds@guerraleeds.com
      *Attorney In Charge*
      Ysmael D. Fonseca
      State Bar No. 240697926
      USDC Adm. No. 1139283
      Email: yfonseca@guerraleeds.com
      *Of Counsel*

      Guerra, Leeds, Sabo & Hernandez, P.L.L.C.
      1534 East 6th Street, Suite 200
      Brownsville, Texas 78520
      Telephone: 956-541-1846
      Facsimile: 956-541-1893
      *Of Counsel*
      **ATTORNEYS FOR DEFENDANTS**
      STARR COUNTY, TEXAS;
      OMAR ESCOBAR, in his official capacity
      as District Attorney for the 229th Judicial
      District; VICTOR CANALES JR.,

in his official capacity as County Attorney
for Starr County; ELOY VERA, in his
official capacity as County Judge for
Starr County; JAIME ALVAREZ, in his
official capacity as Starr County
Commissioner for Precinct 1; RAUL PEÑA,
III, in his official capacity as Starr County
Commissioner for Precinct 2; ELOY GARZA,
in his official capacity as Starr County
Commissioner for Precinct 3; RUBEN D.
SAENZ, in his official capacity for Starr
County Commissioner for Precinct 4;
RENE "ORTA" FUENTES, in his official
capacity as Sheriff for Starr County

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to LR 7.1 D, a certificate of conference is not required.

<u>/s/ Eileen M. Leeds</u>
Eileen M. Leeds

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of February, 2018, I electronically filed the
foregoing with the Clerk of Court using the CM/ECF system which will send notification of
such filing to the following:

**Via E-Notice**
Ms. Nina Perales
Mexican American Legal Defense
and Educational Fund
110 Broadway, Suite 300
San Antonio, TX 78205

**Via E-Notice**
Mr. Efrén C. Olivares
Ms. Rebecca Harrison Stevens
Texas Civil Rights Project
1017 W. Hackberry Ave.
Alamo, Texas 78516

<u>/s/ Eileen M. Leeds</u>
Eileen M. Leeds