United States District Court
Southern District of Texas
**ENTERED**
February 28, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| HILDA GONZALEZ GARZA, *et al*, § § Plaintiffs, § VS. § STARR COUNTY, *et al*, § § Defendants. § | CIVIL ACTION NO. 7:18-CV-46 |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER

**I.   Introduction**

Now before the Court is Plaintiffs' Emergency Application for Temporary Restraining Order ("TRO"), through which Plaintiffs seek to enjoin implementation and enforcement of the "Order of Commissioners Court of Starr County, Texas Setting Policy for Prohibition of Electioneering in or on Property Owned or under the Care, Custody and Control of the County of Starr," adopted by a majority of the Defendant Commissioners on January 8, 2018. (Dkt. No. 4; *see* Dkt. No. 4, Exh. A). Upon consideration of Plaintiffs' Application, Defendants' response (Dkt. No. 14), Plaintiffs' reply (Dkt. No. 16), and the testimony,[1] evidence, and argument presented by all parties at the February 26, 2018 hearing on Plaintiffs' Application, and for the reasons stated on the record and herein, the Court finds that a different policy controls, and that it should be temporarily enjoined only to the extent that it regulates Plaintiffs' electioneering activities in "common areas" as set forth in Section 13 of that policy.

**II.   County's February 12, 2018 "Use Policy" Controls, and is the Subject of Plaintiffs'**

---

[1] Each side presented one witness: Plaintiff Hilda Gonzalez Garza for Plaintiffs and Defendant Omar Escobar, the County's District Attorney ("DA"), for Defendants.

**Application for TRO**

The Court first observes that the purported Order of January 8, 2018 acknowledges the County's ownership of various tracts of land and the government functions served by these properties, and expresses the County's "desire[ ] to regulate" electioneering for various, stated governmental purposes, but stops short of expressly adopting any regulation. (Dkt. No. 4, Exh A at pp. 2-4). In fact, although the Order concludes by "order[ing] that any person violating a rule adopted under this order commits [the] offense…of Criminal Trespass," Defendants' witness testified, and the Court also observes, that the Order itself adopts no rule. *See id.* at p. 4. Therefore, the Court finds that the January 8, 2018 Order is of no force or effect in the County.[2] Nonetheless, Defendants acknowledge that on February 12, 2018, the Defendant Commissioners adopted the County's "Building and Property Use Policy" ("Use Policy"), which sets forth rules and regulations governing the use of County properties, as described more fully herein. (Dkt. No. 14; *see* Dtk. No. 4, Exh. B).[3] Since the Use Policy implicates the exercise of Plaintiffs' asserted right to engage in political speech—specifically, electioneering—protected by the First Amendment to the U.S. Constitution, the Court will consider Plaintiffs' Application as a request to enjoin implementation and enforcement of the Use Policy. To be accorded this relief, Plaintiffs must establish:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006) (quoting *Concerned Women for Am., Inc.*

---

[2] At the TRO hearing, the Court made a preliminary ruling that the January 8, 2018 Order was unconstitutionally vague, but the Court need not reach the constitutionality of the purported Order, as by its plain language, it does not adopt any rule or regulation of any force or effect in the County.

[3] Although the Use Policy includes a provision incorporating the County's "Electioneering policy as adopted on January 5, 2018," since the January 5, 2018 Order adopts only the County's desires, and the Use Policy contains its own stated purpose, the Court finds that this provision is surplusage and that the Use Policy controls. (Dkt. No. 4, Exh. B at §§ 2, 12).

*v. Lafayette Cty.*, 883 F.2d 32, 34 (5th Cir. 1989)) (setting forth elements applicable to request for preliminary injunction); *see Hassani v. Napolitano*, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009) ("A TRO is simply a highly accelerated and temporary form of preliminary injunctive relief," requiring that movant establish same four elements for obtaining preliminary injunction).

**III.    TRO Should Issue Only as to Section 13 of the Use Policy**

Plaintiffs' Original Complaint contains three counts, now construed to address the Use Policy: (1) the Use Policy violates Plaintiffs' right to engage in constitutionally protected political speech, *i.e.*, electioneering; (2) the Use Policy violates § 61.103 of the Texas Election Code, in that it does not enact "reasonable regulations concerning time, place, and manner of electioneering" beyond the established 100-foot "buffer zone" applicable to polling places; and (3) Defendants acted ultra vires in adopting a policy in violation of the Texas Election Code. (Dkt. No. 1); *see* TEX. ELEC. CODE ¶ 61.103.  Although the Use Policy does not define "electioneering," the term is defined by the Election Code as "the posting, use, or distribution of political signs or literature," TEX. ELEC. CODE § 61.003(b)(1), and may also include verbal advocacy for a particular candidate, *see* (Dkt. No. 4 at pp. 19-20) (citing Texas cases). Defendants do not dispute that electioneering finds shelter under the Constitution, and in fact it is well-established that "[p]olitical speech regarding a public election lies at the core of matters of public concern protected by the First Amendment." *Wiggins v. Lowndes Cty., Miss.*, 363 F.3d 387, 390 (5th Cir. 2004).

Plaintiff Gonzalez Garza, currently a Democratic Party candidate for Starr County Precinct Chair, Precinct No. 10, in the March 6, 2018 primary election, and Plaintiff Rosbell Barrera, the current Starr County Chairman of the Republican Party, describe their typical electioneering activities in their sworn declarations attached to Plaintiffs' Application, and Gonzalez Garza expounded on those activities in her testimony before the Court.  *See* (Dkt. No.

4, Exhs. C, D). This evidence, as well as the testimony of Defendants' witness, County DA Escobar who was active in drafting the Use Policy, indicates that for years, Plaintiffs and other County citizens have engaged in electioneering during designated voting periods[4] by setting up campaign tents and "BBQ pits" in the parking lots of County properties that serve as polling places,[5] and also by wearing campaign paraphernalia, handing out campaign materials, and speaking with voters outside the 100-foot buffer zone applicable to those polling places. Escobar explained that in the past, beginning almost a week in advance of the voting period, citizens planning to engage in electioneering have begun to park their vehicles overnight to reserve places for their tents, and that electioneering activities have essentially "commandeered" the back half of the parking lot of the County Courthouse and most of the parking available at the County's La Rosita property, which has severely limited available parking for County business at those locations. Escobar also expressed additional concerns regarding past electioneering activities: that during the May 2016 mayoral election, an argument over a BBQ pit resulted in chicken being flung across the Courthouse parking lot; that electioneers "mob" voters' vehicles as soon as they park; and that the "mix" of pedestrians and traffic in parking lots poses a safety risk. With these concerns in mind, and also his realization that the County had no policy governing the use of its property for any reason,[6] Escobar helped draft the Use Policy, which has as its stated, general purpose:

> To establish the guidelines and criteria under which Starr County can develop, maintain,

---

[4] The Election Code defines "voting period" as "the period beginning when the polls open for voting and ending when the polls close or the last voter has voted, whichever is later." TEX. ELEC. CODE § 61.003(b)(2). The current voting period includes the early voting period from February 20, 2018 through March 2, 2018, and election day on March 6, 2018. *See* (Dkt. No. 4, Exh. C-1).

[5] Counsel for Defendants referred to the practice as "tacos for votes."

[6] Escobar testified that this realization occurred when he asked the County Attorney what would prevent him from parking a trailer with cattle on County property, and the County Attorney answered, "Nothing." Another concern of Escobar's unrelated to electioneering was, apparently, that the County's El Cenizo property, which also serves as a polling place, was being rented without compensation to the County itself.

and control its Facilities in order to support county operations, public service, and historical values. The Commissioners' Court recognizes that facilities are sometimes used for other public purposes and for which adequate parking and safe access must be maintained and blight, distraction, and nuisance must be mitigated in service to the whole community; and to preserve the general health and welfare of the citizens of Starr County.

(Dkt. No. 4, Exh. B at § 2). Relevant to Plaintiffs' claims, the Use Policy includes Section 11 entitled "Parking Zones," defined as the zones indicated in the attached maps of the County Courthouse, La Rosita, and El Cenizo properties, all of which serve as polling places for early voting and election day, as well as the County Annex, which does not. *See* (Dkt. No. 4, Exh. B at § 11; Exh. C-1). This section of the Use Policy includes provisions requiring vehicles to yield to pedestrians, prohibiting passing, limiting parking to designated spaces, allowing vehicles to be left overnight only "in connection with a strict official or governmental purpose," prohibiting "[t]railers, BBQ pits, chairs, tents, recreational vehicles and any other similar items or vehicles that are not passenger vehicles," allowing persons to park vehicles in the parking zones "for so long as their primary purpose is to transact or effect any official business in the county buildings for which the parking zones serve," and allowing vehicles to "display political signs attached to their vehicles in accordance with the Texas Election Code." (Dkt. No. 4, Exh. B at § 11). Although these provisions have the effect of prohibiting electioneering activities in which Plaintiffs and other County citizens have engaged in the past, they apply regardless of whether, for example, a citizen pitches a tent in a parking zone to advocate for a Democratic Party candidate, a Republican Party candidate, or—to use an example offered at the TRO hearing—to sell Girl Scout cookies. In First Amendment terms, Section 11 is both content and viewpoint-neutral, and since the Court agrees with Defendants that the parking lots are not traditional public fora—that is, they are fora with the intended purpose of enabling access to County properties, rather than public places "historically associated with the free exercise of expressive activities,

such as sidewalks, streets, and parks," *United States v. Grace*, 461 U.S. 171, 177 (1983)—Section 11's restrictions on electioneering must only be "reasonable in light of the purpose served by the for[a]," and the Court finds it substantially likely that they are. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107 (2001) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985)); *see also Perry Educ. Ass'n v. Perry Local Educator's Ass'n*, 460 U.S. 37, 46 (1983)).  Provisions which prohibit parking overnight, setting up tents and BBQ pits in designated vehicle spaces, and parking for non-County business, and which at the same time expressly allow vehicles parked for County purposes to display political signage,[7] appear to constitute reasonable restrictions in light of the primary purpose served by the fora: to provide parking for the County's employees and citizens with County business.  Therefore, the Court finds that Plaintiffs are not substantially likely to prevail on the merits of any claim that Section 11 violates the First Amendment or the Election Code, or constitutes ultra vires activity in violation of the Code, and that a TRO enjoining implementation and enforcement of this section should not issue.

Also relevant to Plaintiffs' claims, the Use Policy treats "areas not identified as parking zones" in the four attached maps as "common areas" subject to the provisions in Section 13:

> The use of common areas by persons who are not employees of the County of Starr or not specifically authorized to do so is strictly prohibited.  Persons may apply to the Starr County Judge's Office for a permit to use common areas for any public purpose. Trailers, BBQ pits, chairs, ice chests, tents, and any other similar items are prohibited on common areas.  Upon acceptance of an application for permit, the County Judge's Office shall as soon as time reasonably permits, present to Commissioners' Court for final Approval/Ratification.  However, the Starr County Judge may permit the use of common areas (if the application for permit is too close to event that it would not be practicable to present to Commissioners' Court) after taking into consideration the risk of damage or destruction to county property, the probability of interruption to the normal course of

---

[7] Although Gonzalez Garza testified that she knew of two County employees who, after the adoption of the Use Policy, were instructed that they had to move their vehicles from the County Courthouse parking lot unless they covered the political signage on those vehicles, Escobar testified that the presiding judge gave these instructions mistakenly and without authority, and that the misunderstanding has been corrected.

> governmental functions of the County, the historical value of any common areas, and the liability, risk and the danger of injury posed to the public.

(Dkt. No. 4, Exh. B at § 13). Of concern to Plaintiffs, and to the Court, is that the common areas include sidewalks along the perimeter of the County Courthouse, indistinguishable from the sidewalks forming the perimeter of the U.S. Supreme Court grounds, and found to constitute traditional public fora in *United States v. Grace*, *supra*. *See Grace*, 461 U.S. at 180; *compare with United States v. Kokinda*, 497 U.S. 720, 727-30 (1990) (distinguishing sidewalks at issue in *Grace* from sidewalk leading from parking area to front door of post office, "constructed solely to provide for the passage of individuals engaged in postal business," and which constituted a nonpublic or at the very least, limited public forum subject to the reasonableness test). Although Section 13 is also content-neutral, the County's "ability to permissibly restrict expressive conduct [in traditional public fora] is very limited: the government may enforce reasonable time, place, and manner regulations as long as the restrictions are…'narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Grace*, 461 U.S. at 177 (quoting *Perry*, 460 U.S. at 45).

Section 13 expressly prohibits two of the electioneering activities in which Plaintiffs and other County citizens have engaged—the pitching of tents and setting up of BBQ pits—and since the Use Policy does not define "use," this section presumably includes all other forms of electioneering. In fact, Gonzalez Garza testified that on the weekend before the TRO hearing, she spent a couple of hours electioneering across the street from the County Courthouse, but at one point had crossed to stand on the northwest corner of the Courthouse perimeter sidewalk to speak to a candidate when two County Sheriff's deputies approached her and pointed at the campaign t-shirt she was wearing. Fearing that she risked arrest if she continued to stand there, Gonzalez Garza left. Although the deputies' intent in pointing at Gonzalez Garza's t-shirt is

speculative, this incident highlights the concern raised by the language of Section 13 itself—that "use" of common areas, including sidewalks considered public fora, includes even passive political speech and is prohibited absent application for a permit.[8]  Defendants have not, in fact, disclaimed this reading of Section 13, nor have they offered specific justifications for the regulations on electioneering encompassed by this section.  That is, although they presented evidence, through the testimony of Escobar, justifying Section 11's regulations on electioneering in parking zones, Escobar's concerns regarding the availability of parking for County business, the risk of voters being "mobbed" by electioneers as soon as they park, and the confluence of pedestrians and traffic, do not justify prohibitions of electioneering in common areas—to include, apparently, the prohibition of passive speech in public fora—past the 100-foot buffer zone.  In *Grace*, the purpose of the statutory ban encompassing the protected First Amendment activity in which the plaintiffs engaged—peaceful picketing and leafletting on public fora sidewalks outside the Supreme Court, *see Grace*, 461 U.S. at 176-80—was "to provide for the protection of the [Supreme Court] building and grounds and of the persons and property therein, as well as the maintenance of proper order and decorum," *id.* at 182.  This purpose arguably resembles aspects of the express "general purpose" of the Use Policy, but as in *Grace*, the record here contains "no suggestion" that electioneering in common areas has "in any way obstructed the sidewalks or access to the Building, threatened injury to any person or property, or in any way interfered with the orderly administration of the building or other parts of the grounds." *Grace*, 461 U.S. at 182.  If the Supreme Court was compelled to find that the statutory ban at issue could not be justified as a reasonable restriction because it "[did] not sufficiently serve

---

[8] As Plaintiffs' reply emphasizes, the requirements for obtaining such a permit are potentially onerous, and the Use Policy gives County officials considerable discretion in determining whether a permit shall issue.  *See* (Dkt. No. 16).  The Court need not address whether the permit requirement itself likely renders Section 13 unconstitutional, as the lack of any nexus between Section 13 and the County's proffered justifications for the Use Policy achieves this end.

those public interests that [were] urged as its justification," the record at this stage compels the Court to find it substantially likely that Section 13 suffers from the same constitutional defect, and also that it does not constitute a reasonable restriction under the Texas Election Code. Turning to the other elements required to support the requested relief, the Court acknowledges that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), that Defendants have articulated no harm that would result from a TRO enjoining implementation and enforcement of Section 13 only, and that it serves the public interest to enable Plaintiffs and other County citizens to engage in protected political speech during the current voting period, and until the merits of the case are finally determined.

## IV.   Conclusion

Accordingly, the Court hereby **ORDERS** that Plaintiffs' Emergency Application for TRO, construed to address the County's Use Policy adopted on February 12, 2018, is hereby **GRANTED** to the extent that it seeks an order enjoining implementation and enforcement of Section 13 of the Use Policy[9] until the merits of this case are decided, and is otherwise **DENIED**.

SO ORDERED this 28th day of February, 2018, at McAllen, Texas.

_____
Randy Crane
United States District Judge

---

[9] This section 13 of the Use Policy is quoted *infra* at pp. 6-7.