IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| HILDA GONZALEZ GARZA AND ROSBELL BARRERA, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 7:18-CV-00046 |
| STARR COUNTY, TEXAS; OMAR ESCOBAR, in his official capacity as District Attorney for the 229th Judicial District; VICTOR CANALES JR., in his official capacity as County Attorney for Starr County; ELOY VERA, in his official capacity as County Judge for Starr County; JAIME ALVAREZ, in his official capacity as Starr County Commissioner for Precinct 1; RAUL PEÑA, III, in his official capacity as Starr County Commissioner for Precinct 2; ELOY GARZA, in his official capacity as Starr County Commissioner for Precinct 3; RUBEN D. SAENZ, in his official capacity for Starr County Commissioner for Precinct 4; RENE "ORTA" FUENTES, in his official capacity as Sheriff for Starr County. | § § § § § § § § § § § § § § § § § § | |
| Defendants. | § | |

## FIRST AMENDED COMPLAINT

### INTRODUCTION

Plaintiffs HILDA GONZALEZ GARZA and ROSBELL BARRERA ("Plaintiffs") bring this civil rights action against Starr County, Texas and various Starr County officials (collectively "Defendants" or "Starr County") for declaratory and injunctive relief.

Starr County adopted a far-reaching Building and Property Use Policy (the "Policy") in violation of the First Amendment to the U.S. Constitution and the Texas Election Code. The

Policy, which incorporates an order adopted by the County banning electioneering on all county property (the "Electioneering Order"), is a total prohibition on protected speech and an unconstitutional restriction on the right to peaceably assemble on county property, including parks, lawns, picnic areas, sidewalks and parking zones.

The Policy's speech prohibition permits only the display of political bumper stickers on vehicles in parking zones.  As to all other county property, the Policy requires any person wishing to peaceably assemble or to engage in protected speech to undergo a burdensome application process.

Plaintiffs are residents and registered voters of Starr County.  Plaintiffs are politically active members of the Republican and Democratic parties in Starr County and have engaged and plan to continue to engage in electioneering activities now banned or limited by the County. Plaintiffs challenge the ban because it unconstitutionally restricts their right to free speech and to peaceably assemble and is illegal under state law.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over Plaintiffs' cause of action arising under the Constitution of the United States pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 1983.

2.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

3.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of Texas, the judicial district in which the parties reside and where a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

<u>Plaintiffs</u>

4.      Plaintiff HILDA GONZALEZ GARZA is a resident and registered voter of Starr County.  She is a politically active member of the Democratic Party.  Plaintiff GARZA ran for Democratic Party Precinct Chair for Starr County Precinct No. 10 in the 2018 primary election. She electioneered on county-owned property during the 2018 primary elections and intends to electioneer on county-owned property during voting periods for the May 2018 Texas Democratic Party runoff elections, the November 6, 2018 general election and future elections.

5.      Plaintiff ROSBELL BARRERA is a resident and registered voter of Starr County.  He serves as the chairman of the Starr County Republican Party.  Plaintiff BARRERA intends to electioneer on county-owned property during the November 6, 2018 general election and future elections.

<u>Defendants</u>

6.      Defendant STARR COUNTY is a county organized under the laws of the State of Texas.

7.      Defendant ELOY VERA is the County Judge of Starr County.  He presides over the Starr County Commissioners' Court, which enacted the Electioneering Order and the Policy. He carries out budgetary and policy making functions of county government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

8.      Defendant JAIME ALVAREZ is the Starr County Commissioner for Precinct 1. He is a member of the Starr County Commissioners' Court, which enacted the Electioneering Order and the Policy.   He carries out budgetary and policy making functions of county

3

government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

9.      Defendant RAUL PEÑA, III is the Starr County Commissioner for Precinct 2.  He is a member of the Starr County Commissioners' Court, which enacted the Electioneering Order and the Policy.  He carries out budgetary and policy making functions of county government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

10.     Defendant ELOY GARZA is the Starr County Commissioner for Precinct 3.  He is a member of the Starr County Commissioners' Court, which enacted the Electioneering Order and the Policy.  He carries out budgetary and policy making functions of county government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

11.     Defendant RUBEN D. SAENZ is the Starr County Commissioner for Precinct 4.  He is a member of the Starr County Commissioners' Court, which enacted the Electioneering Order and the Policy.  He carries out budgetary and policy making functions of county government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

12.     Defendant RENE "ORTA" FUENTES is the Sheriff for Starr County.  He serves as a licensed peace officer and oversees, directs, and controls the Starr County Sheriff's Office, which is charged with the enforcement of criminal laws, including trespassing offenses involving Starr County property.  He is responsible for enforcing the Electioneering Order and the Policy.  He is sued in his official capacity.

13.     Defendant VICTOR CANALES, JR. is the County Attorney for Starr County.  He is responsible for prosecuting misdemeanor criminal cases in Starr County, assists law enforcement officials with criminal investigations, and provides legal advice to the Starr County Commissioners' Court and other county elected officials.  He is also responsible for enforcing the Electioneering Order and the Policy.  He is sued in his official capacity.

14.     Defendant OMAR ESCOBAR, JR. is the District Attorney for the 229th Judicial District, which includes the counties of Duval, Jim Hogg and Starr.  He is responsible for prosecuting felony criminal cases in Starr County and assists law enforcement officials with criminal investigations.  He assisted the Commissioners' Court in drafting the Policy.  He is also responsible for enforcing the Electioneering Order and the Policy.  He is sued in his official capacity.

15.     At all times relevant hereto, Defendants were and have been acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Texas and Starr County, Texas.

## FACTUAL ALLEGATIONS

### *Defendants Adopted an Unlawful Electioneering Order*

16.     On January 8, 2018, the Starr County Commissioners' Court adopted the Electioneering Order. The Electioneering Order constitutes an official policy and practice of Starr County.

17.     The Electioneering Order states that Starr County "desires to regulate the time, place and manner of electioneering by prohibiting electioneering during any 'voting period' as defined by the Texas Election Code in or on property owned or under the care, custody and control of the County of Starr."

5

18.     Texas Election Code § 61.003(b)(2) defines voting period as "the period beginning when the polls open for voting and ending when the polls close or the last voter has voted, whichever is later."

19.     Electioneering includes verbal advocacy for a particular candidate, measure or political party.  Texas Election Code § 61.003(b)(1) defines electioneering as "the posting, use, or distribution of political signs or literature."

20.     The Electioneering Order directs Defendant ELOY VERA's office to "place proper notice of no Electioneering on County Property to inform the general public of the restriction or prohibition."

21.     The Electioneering Order states that "[t]he Starr County Sheriff shall enforce these policies as mandated by Texas Local Government Code[.]"

22.     The Electioneering Order states "that any person violating a rule adopted under this order commits an offense, will be prosecuted as a Criminal Trespass which is a Class B misdemeanor, pursuant, [sic] punishable by fine not to exceed $2,000.00 and up to six (6) months in Jail for each violation."

23.     The Electioneering Order references and attaches as "further" information maps of several county properties and surrounding areas.  The maps include red markings around the county properties.

24.     The Electioneering Order does not limit the electioneering ban to county property on which election polling places are located, but instead applies to all property owned or under the control of Starr County.

25.     For example, the Electioneering Order references and includes a map of the Starr County Courthouse Annex.  The Starr County Courthouse Annex was not a polling place in the 2018 Primary Election.

26.     The Electioneering Order also references and includes a map of La Victoria Community Center-Zarate Park.   La Victoria Community Center-Zarate Park was a designated polling place for the 2018 Primary Election Day, but not during early voting.

27.     With respect to county property used for polling places, the Electioneering Order bans electioneering beyond the 100-foot perimeter established by the Texas Election Code.  Tex. Elec. Code § 61.003.

28.     The effect of the Electioneering Order is to establish zones of varying sizes outside polling places in which electioneering is completely banned.  For example, the distance from the door of the La Rosita Commissioner Precinct #1 polling place to the edge of the county property is approximately 155 feet.  The distance from the door of the El Cenizo polling place [Starr County Precinct Office on highway FM 1430] to the edge of the county property is approximately 232 feet.  The distance from the door of the Starr County Courthouse to the edge of the county property is approximately 153 feet.  The distance from the door of La Victoria Community Center-Zarate Park to the edge of the county property is approximately 468 feet.

29.     On January 8, 2018, when the Starr County Commissioners' Court enacted the Electioneering Order, the Commissioner's Court did not allow comment from the general public. At that meeting, Plaintiff HILDA GONZALEZ GARZA spoke up to raise a concern that the Electioneering Order violated the Texas Election Code.  However, Defendant ELOY VERA refused to recognize Plaintiff GARZA.

30.     On January 26, 2018, Plaintiff HILDA GONZALEZ GARZA sent a letter to Defendant OMAR ESCOBAR JR., and copied all Defendants who sit on the Commissioners Court, stating her intent to engage in electioneering beyond the 100-foot marker and asking whether her planned activities would violate the newly-adopted Electioneering Order.

31.     Plaintiff HILDA GONZALEZ GARZA has not received a response to her letter from Defendants.

32.     On February 1, 2018, Plaintiff ROSBELL BARRERA sent a letter to Defendant OMAR ESCOBAR JR. and copied all Defendants who sit on the Commissioners Court. He stated his intent to engage in electioneering activities beyond the 100-foot marker in support of Republican candidates and asked whether his planned activities would violate the Electioneering Order.

33.     Plaintiff ROSBELL BARRERA has not received a response to his letter from Defendants.

34.     After Plaintiffs sent their letters to Starr County, Defendant ELOY GARZA asked the Commissioners Court to revisit the Electioneering Order at its February 12, 2018 meeting. Defendant ELOY VERA placed that item on the agenda.

35.     At the February 12, 2018 meeting, Defendant ELOY GARZA asked Defendant VICTOR CANALES JR. to clarify the meaning of electioneering in the Electioneering Order.  Defendant VICTOR CANALES JR. responded that the word electioneering "speaks for itself."     Defendant VICTOR CANALES JR. further stated: "There cannot be electioneering.  There cannot be loitering.  There cannot be essentially 'pressing the flesh' on county property . . . You cannot have barbeque pits in parking lots.  Signage can't be on vehicles in the parking areas."

36.     Defendant VICTOR CANALES JR. also stated at that meeting that the Starr County Sheriff's office would enforce the Electioneering Order.

37.     At the February 12, 2018 Commissioners' Court meeting, Plaintiff HILDA GONZALEZ GARZA sought to raise concerns to the Commissioners about the scope and illegality of the Electioneering Order, but Defendant ELOY VERA did not allow for any public comment on the Electioneering Order.

**_Defendants Adopted an Unlawful Building and Property Use Policy_**

38.     At the February 12, 2018 meeting, the Commissioners' Court did not revise or rescind the Electioneering Order but instead adopted a Building and Property Use Policy that incorporated the Electioneering Order.

39.     The Policy states that the Electioneering Order "is hereby incorporated in this STARR COUNTY BUILDING AND PROPERTY USE POLICY for all purposes."

40.     The Policy constitutes an official policy and practice of Starr County.

41.     The Policy regulates public use of all county property.

42.     The Policy is not limited to use of county property during a voting period.

43.     The Policy distinguishes between and imposes separate rules on parking areas and "common areas."

44.     The Policy states that in parking zones, only "county or government vehicles serving an official purpose" and "passenger vehicles" are permitted.  "Political signs" on these vehicles is permitted "in accordance with the Texas Election Code."

45.     The Policy's restrictions on areas designated as parking zones apply regardless of whether the parking zone's perimeter reaches outside the 100-foot marker under the Texas Election Code.

46.     "Common areas" as defined by the Policy include all county property except for five parking zones set out in Attachment C to the Policy.  Attachment C to the Policy shows maps of five county properties: La Rosita Commissioner Precinct #1, El Cenizo, Starr County Annex, La Victoria Community Center, and the Starr County Courthouse.

47.     The maps in Attachment C to the Policy show red lines delineating the boundaries of the five county properties and thick red lines delineating the parking zones of those properties. Parking zones also bear a mark of "PZ" in red ink.

48.      "Common areas" include sidewalks, lawns, parks, picnic areas, public building grounds, and meeting rooms and other interior spaces such as hallways, elevators, and bathrooms.  "Common areas" also include parking areas in all the county properties that are not included in Attachment C to the Policy.

49.     The Policy prohibits the use of "common areas" by persons who are not employees of the County or "specifically authorized" to use "common areas," unless those persons apply to the Starr County Commissioners' Court or Defendant ELOY VERA's office for a permit.

50.     A violation of the Policy's electioneering ban constitutes criminal trespass, a Class B misdemeanor punishable by a fine not to exceed $2,000.00 and up to six (6) months in jail.

51.     Under the Policy, a person who wishes to apply for a permit must complete a three-page Starr County Courthouse Public Use Request Form.

52.     A person may apply for a permit to use "common areas" only for a "public purpose."  The Policy does not define "public purpose."

53.     Under the Policy, Defendant ELOY VERA is the current buildings and facility manager.

54.     Applications must be submitted to Defendant ELOY VERA "no less than 30 days prior to the intended use date."

55.     The Policy grants Defendant ELOY VERA the unfettered discretion to accept an application less than 30 days prior to the intended use "if the circumstances allow for the intended use."

56.     To apply for a permit, the applicant must be at least 21 years of age, state the purpose for which the county property will be used, sign a release of liability, and have the applicant's signature notarized by a Texas notary public.

57.     The applicant must pay a deposit of $50.00 to apply to use county property specifically listed in the Policy, including the Starr County Courthouse, Starr County Fairgrounds, El Cenizo Park Community Center, La Rosita Library, Starr County Annex Conference Room, and Zarate Park Community Center.

58.     The amount of the deposit to use the Starr County Courthouse or its grounds "rang[es] from $0-1,000" and the amount is left to "the sole discretion of the Commissioner's Court."  The Policy also grants the Commissioners' Court the discretion to "impose additional restrictions and regulations for approved use on a case by case basis."

59.     The Policy states that an application deposit for use of "commons areas" of any county property "may be refunded" 14 days after the scheduled use of the facility.

60.     The Policy also imposes rental fees for use of "common areas" after regular working hours, *i.e.*, Monday through Friday from 8:00 a.m. to 5:00 p.m.

11

61.     The rental fee is $25 for use of "common areas" in the Starr County Courthouse, Starr County Fairgrounds, El Cenizo Park Community Center, La Rosita Library, Starr County Annex Conference Room, and Zarate Park Community Center.  The Policy does not define or limit the amount of rental fees for any other county properties.

62.     The Policy also states that the Commissioners' Court "may elect to waive fees for use of County facilities if they determine that the County is receiving fair value by allowing the use of its facilities."

63.     An application to use "common areas" is "not valid until all fees are paid."

64.     The Policy provides that all users "may be required to have a licensed peace officer, or Starr County contracted security services, at their event."  The Policy does not specify under what circumstances these services "may be required."

65.     The Policy requires "proper attire of shirts and shoes" during use of county property.

66.     The Policy states that "no political signs or advertisements" may be displayed on "historically restored areas" of the Starr County Courthouse.   The Policy does not define "historically restored areas."

67.      The Policy provides that "[t]he Commissioners' Court retains the right to waive or modify any of the requirements of this Policy, when it determines that the waiver and/or modification is:   necessary in order to serve the public interest, will allow use which will continue to meet the intent of this Policy, and will not violate any applicable statutory requirements."

68.     The Policy does not state how an applicant may apply for a waiver or modification of the requirements of the Policy.

69.     The Policy also does not state the process for how the Commissioners' Court will consider a waiver application.

***Defendants Expressed Their Intent to Enforce the Electioneering ban Despite Concerns of the Texas Secretary of State***

70.     Immediately after Defendants adopted the Policy and the Electioneering Order, Defendants posted both the Electioneering Order and the Policy on the County's official website.

71.     On February 12, 2018, Plaintiff HILDA GONZALEZ GARZA emailed the Texas Secretary of State's Elections Division to inquire about the legality of the ban.  On February 15, 2018, Christina Adkins, Legal Director of the Elections Division at the Texas Secretary of State's Office, emailed Plaintiff GARZA, stating that:

> Section 61.003 of the Texas Election Code specifically states that any entity that owns or controls a public building that is used as a polling place cannot prohibit electioneering on the premises.  The resolution from Starr County appears to prohibit electioneering entirely, not just provide regulations as to the time, place, and manner of electioneering.  It appears as though this would be in conflict with 61.003 (a-1) of the code.

72.     On February 15, 2018, Sam Taylor, the Communications Director of the Texas Secretary of State's Office stated publicly:  "The election code is very clear that they may not ban or prohibit at any time electioneering on the building's premises outside of that 100-foot mark."  Mr. Taylor's comments were published locally in *The Monitor* newspaper.

73.     Also on February 15, 2018, Defendant OMAR ESCOBAR JR. responded to the public position of the Texas Secretary of State's Office by maintaining that the Starr County electioneering ban was a reasonable regulation, stating "I really don't see that anybody's rights are being violated[.]"

74.     On February 16, 2018, Defendant OMAR ESCOBAR JR. posted on his official Facebook page a message that stated in part: "Electioneering continues to be prohibited in all

designated county parking zones.  Once again, persons may request a permit to use non-parking areas for any allowed purpose. As of yet, neither the Starr County Commissioners' Court nor the Starr County Judge's Office have granted and they are not required to grant a permit to anyone requesting use of public property."

75.     On February 20, 2018, Sam Taylor, the Communications Director of the Secretary of State's Office, again reiterated that the Election Code "says that [Defendants] may enact reasonable regulations concerning the time, place and manner of electioneering.  But a reasonable regulation is not an outright ban.  So, it's very important to make that distinction as to what a reasonable regulation is."  Mr. Taylor's comments were published locally by KRGV Channel 5 News on its website.

76.     In response to Mr. Taylor's public statement, on February 20, 2018, Defendant OMAR ESCOBAR JR. stated: "Well, somebody would have to challenge the resolution, or challenge the laws, or challenge the policies, and up to now, we don't have a lawsuit, so nobody is challenging the policies."  Mr. Escobar's comments were published locally by KRGV Channel 5 News on its website.

### *Defendants Enforced the Electioneering Order and the Policy During the Primary Election Voting Period*

77.     Each election cycle, Starr County residents assemble and electioneer on county property during the voting period.  Residents post and hold up signs, distribute brochures, verbally advocate for propositions and candidates, display car bumper stickers, and wear campaign t-shirts, among other electioneering activities.

78.     To facilitate their electioneering activities, campaigns and volunteers in Starr County regularly bring barbeque grills, distribute food plates, water and sodas, and set up tents outside polling places, including on county-owned property.

79.     For years, Plaintiffs have peacefully electioneered and advocated for policies, political parties, and candidates of their choice.  Plaintiffs regularly wear t-shirts supporting their candidates of choice, hold up political signs, distribute campaign brochures, provide information to voters about candidates, and answer any questions from voters and neighbors about those candidates.

80.     Plaintiffs have peacefully assembled and engaged in these electioneering activities during the voting period on county property, including in parking lots and park areas, on sidewalks, and outside polling places.

81.     When assembling and electioneering at polling places, Plaintiffs remain beyond the 100-foot distance from the outside door as required by the Texas Election Code.

82.     Campaign workers, volunteers, and politically-active residents also wear and display political signage during election season at non-polling locations owned by Starr County. For example, campaign workers travel to vote-counting locations such as the County Courthouse Annex and display political signs, wear political t-shirts, and park vehicles with political displays or bumper stickers.

83.     During the 2018 primary election voting periods, Plaintiff HILDA GONZALEZ GARZA engaged in her regular electioneering activities including, but not limited to, wearing t-shirts with political messaging in support of Democratic candidates, distributing ballot information and copies of the U.S. Constitution to voters, encouraging people to vote, and displaying political bumper stickers on her car.  Plaintiff GARZA assembled and engaged in these activities on county property, including at polling places beyond the 100-foot marker as permitted by the Texas Election Code.

84.     As a candidate running in the 2018 primary election for Precinct Chair for Starr County Precinct No. 10, Plaintiff HILDA GONZALEZ GARZA also stood outside of polling places (beyond the 100-foot marker) distributing sample ballots to voters and asking voters to cast their ballot for her.

85.     On February 20, 2018, the first day of early voting in the March 2018 primary election, Starr County Elections Director John Lee Rodriguez directed at least one Starr County employee and at least one Starr County official with political bumper stickers or displays on their vehicles to remove their vehicles from the courthouse parking lot or cover their political displays.   Those vehicles were parked at the Starr County Courthouse beyond the 100-foot marker.

86.     On February 20, 2018, Plaintiff HILDA GONZALEZ GARZA arrived at the Starr County Courthouse intending to electioneer.   After she arrived, Plaintiff GARZA saw one of her former high school classmates, who works at the Courthouse, walking quickly in the parking lot toward her former classmate's car which was located beyond the 100-foot zone.   Plaintiff GARZA's friend told Plaintiff GARZA that Starr County Elections Director John Lee Rodriguez had directed Plaintiff GARZA's former classmate either to move her car or cover up the bumper sticker on the rear window of her car.   The bumper sticker advocated for the former classmate's brother, a candidate for Starr County Treasurer.

87.     Also on February 20, 2018, a Justice of the Peace, who also works at the Courthouse, approached Plaintiff HILDA GONZALEZ GARZA and asked her if she would help him cover up his re-election campaign displays on the two back side windows of his truck. His truck was parked beyond the 100-foot marker.   The Justice of the Peace told Plaintiff GARZA that Starr County Elections Director John Lee Rodriguez had directed him to cover up the

campaign displays on the car. Plaintiff GARZA helped the Justice of the Peace cover up the political displays on his truck so that he would not have to move his truck out of the parking lot.

88.     After Plaintiff HILDA GONZALEZ GARZA helped the Justice of the Peace cover up the political displays on his truck, she left the County Courthouse parking lot because she feared arrest under the electioneering ban as a result of her electioneering activities and having political bumper stickers on her car. Plaintiff GARZA had originally intended to be present and electioneer at the County Courthouse all day.

89.     On February 24, 2018, Plaintiff HILDA GONZALEZ GARZA again went to the County Courthouse intending to electioneer all day. Plaintiff GARZA spoke to a candidate who stood on the sidewalk beyond the 100-foot marker. The candidate told Plaintiff GARZA that the Sheriff's Office had asked the candidate to leave the parking lot earlier that day because she was wearing a political t-shirt.

90.     Also on February 24, 2018, while Plaintiff GARZA was standing on the sidewalk outside the 100-foot marker wearing a t-shirt in support of a Democratic candidate, two Starr County Deputy Sheriffs approached Plaintiff GARZA and told her to leave, pointing to her t-shirt. A friend of Plaintiff GARZA who was also standing on the sidewalk was not asked to leave. That friend was not wearing a political t-shirt. Neither Plaintiff GARZA nor her friend had applied for a permit under the Policy.

### *The Court Found that the Electioneering Order Has No Force or Effect*

91.     On February 26, 2018, the U.S. District Court for the Southern District of Texas held a hearing on Plaintiffs' Emergency Application for a Temporary Restraining Order.

92.     At the February 26, 2018 hearing, the Court declared Defendants' Electioneering Order unconstitutionally vague, and found that the Electioneering Order "is a document that

expresses only the desires of the county and it contains no language actually adopting any order or rule" and that if the Electioneering Order "were actually something enforceable it would be *ultra vires*."

93.     Two days later, on February 28, 2018, the Court issued a written decision partially granting Plaintiffs' Emergency Application for a Temporary Restraining Order.  In its order, the Court explained that the Policy's provision incorporating the Order is surplusage and the language of the Policy controls.

### *Despite This Court's Findings, Defendants Continue to Enforce the Electioneering Order and the Policy*

94.     Since entry of the Temporary Restraining Order, Defendants have met for regular business but neither rescinded nor revised the Electioneering Order or the Policy.  The Policy continues to incorporate the Electioneering Order in its entirety.

95.     As of April 2, 2018, Defendants maintain the Electioneering Order and the Policy on the Starr County official website.

96.     On March 6, 2018, at the El Cenizo polling location, residents wishing to electioneer on the grassy areas and sidewalks at El Cenizo were asked by the Starr County Sheriff's Office to leave the property.

97.     Sheriff Deputy Esmeralda Muñiz, who was at El Cenizo enforcing the Policy, was advised by Sergeant Armando Treviño that no one was permitted to electioneer on the El Cenizo property.   As a result, Deputy Muñiz told the residents who had assembled there to leave.  Deputy Muñiz was not advised of the Temporary Restraining Order by the Starr County's Sheriff's Office.  Deputy Muñiz subsequently allowed residents to stand on the lawns and grassy areas of the property after being informed of the Temporary Restraining Order by Plaintiff GARZA.

*__Plaintiffs Fear Injury From Defendants' Enforcement__*

98.    Plaintiff HILDA GONZALEZ GARZA has already been denied the right to electioneer outside the 100-foot marker as permitted by the Texas Election Code, and she has observed others being denied that right during the voting period.  Plaintiff GARZA fears she will be fined or arrested if she assembles and electioneers during the Democratic runoff election in May 2018, the General Election in November 2018, and subsequent elections.

99.    As a practicing attorney, Plaintiff HILDA GONZALEZ GARZA visits the County Courthouse on behalf of clients who have cases pending in court.  She fears she will be cited or arrested on county property when conducting regular business at the courthouse because she displays political messages on her car and clothing.

100.    Plaintiff ROSBELL BARRERA's electioneering activities include wearing t-shirts promoting his preferred candidates and political party.  Plaintiff ROSBELL BARRERA occasionally wears these t-shirts while conducting his daily business in Starr County, including visiting county property, including during voting periods.  On election night, Plaintiff ROSBELL BARRERA assembles at and wears electioneering t-shirts to the Starr County Courthouse Annex where votes are tabulated.  Plaintiff ROSBELL BARRERA fears arrest and prosecution under the Policy for his assembly and electioneering activities, including wearing political t-shirts, on county property.

101.    Plaintiffs regard assembly and electioneering as part of their civic duty and intend to continue assembling and electioneering, as they have done for many years, during the voting periods for the 2018 runoff and general elections and future elections.

102.    Plaintiffs fear that if they assemble and engage in electioneering activities on county property they will be subject to arrest and punishment under the Policy.

103.    In the many years in which Starr County residents have peacefully engaged in assembly and electioneering on county property, county governmental operations have not been disrupted.  Similarly, there have been no health or safety problems caused by peaceful assembly and electioneering.

104.    To the contrary, assembly and electioneering activities on county property allow voters to learn more about candidates, share their views and make informed decisions on how to cast their ballots.

105.    In the many years Plaintiffs have engaged in these activities, they have not observed intimidation or harassment of voters on property owned by Starr County beyond the 100-foot marker.

## CAUSES OF ACTION

## <u>FIRST CAUSE OF ACTION</u>

**Starr County's Policy Abridges Plaintiffs' Free Speech Rights in Violation of the U.S. Constitution**

106.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs of this First Amended Complaint as though fully set forth here.

107.    The First Amendment to the U.S. Constitution provides: "Congress shall make no law . . . abridging the freedom of speech[.]"

108.    The free speech guarantee of the First Amendment is made applicable to the states through the Fourteenth Amendment, which provides "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

109.    Defendants' Policy, including the Electioneering Order incorporated by reference, abridges political speech that lies at the core of the protections afforded by the First Amendment.

110.    Defendants' Policy, including the Electioneering Order incorporated by reference, is not narrowly tailored to serve a compelling state interest.

111.    Defendants' Policy, including the Electioneering Order incorporated by reference, is not a reasonable regulation of protected speech.

112.    Defendants' Policy, including the Electioneering Order incorporated by reference, is unconstitutionally overbroad.

113.    Defendants' Policy, including the Electioneering Order incorporated by reference, is unconstitutionally vague.

## SECOND CAUSE OF ACTION

**Starr County's Policy Abridges Plaintiffs' Rights to Peaceably Assemble in Violation of the U.S. Constitution**

114.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs of this First Amended Complaint as though fully set forth here.

115.    The First Amendment to the U.S. Constitution provides: "Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble[.]"

116.    The First Amendment right peaceably to assemble is made applicable to the states through the Fourteenth Amendment, which provides "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

117.    Defendants' Policy, including the Electioneering Order incorporated by reference, abridges Plaintiffs' rights peaceably to assemble.

118.    Defendants' Policy, including the Electioneering Order incorporated by reference, is not narrowly tailored to serve a compelling state interest.

119.    Defendants' Policy, including the Electioneering Order incorporated by reference, is not a reasonable regulation.

120.    Defendants' Policy, including the Electioneering Order incorporated by reference, is unconstitutionally overbroad.

121.    Defendants' Policy, including the Electioneering Order incorporated by reference, is unconstitutionally vague.

## THIRD CAUSE OF ACTION

### Starr County's Policy Violates § 61.003 of the Texas Election Code

122.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs of this First Amended Complaint as though fully set forth here.

123.    Texas Election Code § 61.003(a-1) provides that "[t]he entity that owns or controls a public building being used as a polling place may not, at any time during the voting period, prohibit electioneering on the building's premises outside of the area [within 100 feet of an outside door of a polling place], but may enact reasonable regulations concerning the time, place, and manner of electioneering."

124.    Starr County is subject to Section 61.003 of the Texas Election Code.

125.    Defendants' Policy, including the Electioneering Order incorporated by reference, violates Section 61.003(a-1) of the Texas Election Code, which prohibits electioneering within 100 feet of the door of a polling place and requires jurisdictions like Starr County to permit

electioneering beyond the 100-foot zone subject to reasonable time, place and manner regulations.

126.   Defendants' Policy, including the Electioneering Order incorporated by reference, is not a reasonable time, place and manner regulation under Section 61.003 of the Texas Election Code.

127.   Starr County's Policy, including the Electioneering Order incorporated by reference, also conflicts with Section 61.003 of the Texas Election Code by imposing different criminal penalties for electioneering within the 100-foot zone.

## FOURTH CAUSE OF ACTION

### Starr County's Policy Constitutes *Ultra Vires* Activity

128.   Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs of this First Amended Complaint as though fully set forth here.

129.   Under Texas law, an *ultra vires* suit may be brought against government officials acting without legal authority or failing to perform a purely ministerial act.

130.   Defendants are responsible for the administration of elections in Starr County, Texas and enforcement of laws related to elections.  Texas law both constrains Defendants' election authority and prescribes specific, ministerial acts for election administration that Defendants must perform.

131.   Defendants have acted without legal authority by adopting a policy expressly prohibited by Texas Election Code § 61.003 and by expressing their intention to enforce the Policy, including the Electioneering Order incorporated by reference.  Defendants' actions undertaken without legal authority are *ultra vires* acts.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

1.      A declaratory judgment that Defendants' Policy, including the Electioneering Order incorporated by reference, in its entirety, violates Plaintiffs' rights to free speech and to peaceably assemble as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution;

2.      A declaratory judgment that Defendants' Policy, including the Electioneering Order incorporated by reference, violates Section 61.003 of the Texas Election Code;

3.      A declaratory judgment that Defendants' Policy, including the Electioneering Order incorporated by reference, is *ultra vires*;

4.      An injunction prohibiting Defendants and their officials, employees, and agents from implementing or enforcing the Policy, including the Electioneering Order incorporated by reference;

5.      An order awarding Plaintiffs reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and any other applicable law; and

6.      Such other and further relief as this Court deems just and proper.


Dated: April 2, 2018                            Respectfully submitted,

MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
By: */s/  Nina Perales*
Nina Perales
State Bar No. 24005046
SDTX Bar No. 21127
nperales@maldef.org

Celina Moreno
State Bar No. 24074754
SDTX Bar No. 2867694
cmoreno@maldef.org
Alejandra Ávila
State Bar No. 24089252
SDTX Bar No. 2677912
aavila@maldef.org
110 Broadway, Suite 300
San Antonio, TX 78205
Tel: (210) 224-5476
Fax: (210) 224-5382

**TEXAS CIVIL RIGHTS PROJECT**
By: */s/ Efrén C. Olivares*
Efrén C. Olivares
State Bar No. 24065844
SDTX Bar No. 1015826
efren@texascivilrightsproject.org
Rebecca Harrison Stevens
State Bar No. 24065381*
beth@texascivilrightsproject.org
1017 W. Hackberry Ave.
Alamo, Texas 78516
Tel: (956) 787-8171 ext. 121
*Admitted *pro hac vice*

Attorneys for Plaintiffs HILDA GONZALEZ
GARZA and ROSBELL BARRERA

## Certificate of Service

The undersigned counsel hereby certifies that, on the 2nd day of April 2018, she has electronically submitted a true and correct copy of the above and foregoing First Amended Complaint via the Court's electronic filing system, which will serve a copy on all counsel of record for Defendants.

*/s/ Alejandra Ávila*
Alejandra Ávila