IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| HILDA GONZALEZ GARZA AND | § | |
| ROSBELL BARRERA, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:18-CV-00046 |
| | § | |
| STARR COUNTY, TEXAS; | § | |
| OMAR ESCOBAR, in his official capacity | § | |
| as District Attorney for the 229th Judicial | § | |
| District; VICTOR CANALES JR., | § | |
| in his official capacity as County Attorney | § | |
| for Starr County; ELOY VERA, in his | § | |
| official capacity as County Judge for | § | |
| Starr County; JAIME ALVAREZ, in his | § | |
| official capacity as Starr County | § | |
| Commissioner for Precinct 1; RAUL PEÑA, | § | |
| III, in his official capacity as Starr County | § | |
| Commissioner for Precinct 2; ELOY GARZA, | § | |
| in his official capacity as Starr County | § | |
| Commissioner for Precinct 3; RUBEN D. | § | |
| SAENZ, in his official capacity for Starr | § | |
| County Commissioner for Precinct 4; | § | |
| RENE "ORTA" FUENTES, in his official | § | |
| capacity as Sheriff for Starr County. | § | |
| | § | |
| Defendants. | § | |

## SECOND AMENDED COMPLAINT

Plaintiffs HILDA GONZALEZ GARZA and ROSBELL BARRERA ("Plaintiffs") bring

this civil rights action against Starr County, Texas and various Starr County officials

(collectively "Defendants" or "Starr County") for declaratory and injunctive relief.

Starr County adopted a far-reaching property use policy (the "Policy") in violation of the

First Amendment to the U.S. Constitution and the Texas Election Code. The Policy began as an

order adopted by the County banning electioneering on all county property (the "Electioneering Order"), and was subsequently revised twice by the County and retitled the "Building and Property Use Policy." In its current form, the Policy remains an unconstitutional and unlawful regulation.

The Policy requires Plaintiffs to undergo a burdensome permit application process and pay a one-size-fits-all deposit if they wish to speak or assemble peaceably on six identified county properties. The Policy also prohibits Plaintiffs from exercising their First Amendment rights during county holidays on all county property, even in parks and on sidewalks. In some parks, the Policy also requires Plaintiffs to apply for a permit and pay fees for after-hours use. The Policy prohibits Plaintiffs from speaking and assembling on all county properties that are not among the six identified county properties, including at the Falcon County Park or on lawns in front of community centers, the Sheriff's Office, and the Commissioners' offices, for example.

Plaintiffs are residents and registered voters of Starr County. Plaintiffs are politically active members of the Republican and Democratic parties in Starr County and have engaged and plan to continue to engage in electioneering activities now banned or limited by the County. Plaintiffs challenge the Policy because it unconstitutionally restricts their right to free speech and peaceably to assemble and is illegal under state law.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over Plaintiffs' cause of action arising under the Constitution of the United States pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 1983.

2.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

3.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of Texas, the judicial district in which the parties reside and where a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

### *Plaintiffs*

4.      Plaintiff HILDA GONZALEZ GARZA is a resident and registered voter of Starr County.  She is a politically active member of the Democratic Party.  Plaintiff GARZA ran for Democratic Party Precinct Chair for Starr County Precinct No. 10 in the 2018 primary election. She electioneered on county-owned property during the 2018 primary elections and intends to electioneer on county-owned property during voting periods for the May 2018 Texas Democratic Party runoff elections, the November 6, 2018 general election, and future elections.

5.      Plaintiff ROSBELL BARRERA is a resident and registered voter of Starr County.  He serves as the chairman of the Starr County Republican Party.  Plaintiff BARRERA intends to electioneer on county-owned property during the November 6, 2018 general election and future elections.

### *Defendants*

6.      Defendant STARR COUNTY is a county organized under the laws of the State of Texas.

7.      Defendant ELOY VERA is the County Judge of Starr County.  He presides over the Starr County Commissioners' Court, which enacted the Electioneering Order and the Policy. He carries out budgetary and policy making functions of county government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

3

8.      Defendant JAIME ALVAREZ is the Starr County Commissioner for Precinct 1.  He is a member of the Starr County Commissioners' Court, which enacted the Electioneering Order and the Policy.   He carries out budgetary and policy making functions of county government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

9.      Defendant RAUL PEÑA, III is the Starr County Commissioner for Precinct 2.  He is a member of the Starr County Commissioners' Court, which enacted the Electioneering Order and the Policy.  He carries out budgetary and policy making functions of county government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

10.     Defendant ELOY GARZA is the Starr County Commissioner for Precinct 3.  He is a member of the Starr County Commissioners' Court, which enacted the Electioneering Order and the Policy.  He carries out budgetary and policy making functions of county government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

11.     Defendant RUBEN D. SAENZ is the Starr County Commissioner for Precinct 4.  He is a member of the Starr County Commissioners' Court, which enacted the Electioneering Order and the Policy.   He carries out budgetary and policy making functions of county government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

12.     Defendant RENE "ORTA" FUENTES is the Sheriff for Starr County.  He serves as a licensed peace officer and oversees, directs, and controls the Starr County Sheriff's Office, which is charged with the enforcement of criminal laws, including trespassing offenses involving

4

Starr County property. He is responsible for enforcing the Electioneering Order and the Policy. He is sued in his official capacity.

13.     Defendant VICTOR CANALES, JR. is the County Attorney for Starr County. He is responsible for prosecuting misdemeanor criminal cases in Starr County, assists law enforcement officials with criminal investigations, and provides legal advice to the Starr County Commissioners' Court and other county elected officials. He is also responsible for enforcing the Electioneering Order and the Policy. He is sued in his official capacity.

14.     Defendant OMAR ESCOBAR, JR. is the District Attorney for the 229th Judicial District, which includes the counties of Duval, Jim Hogg and Starr. He is responsible for prosecuting felony criminal cases in Starr County and assists law enforcement officials with criminal investigations. He assisted the Commissioners' Court in drafting and revising the Policy. He is also responsible for enforcing the Electioneering Order and the Policy. He is sued in his official capacity.

15.     At all times relevant hereto, Defendants were and have been acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Texas and Starr County, Texas.

## FACTUAL ALLEGATIONS

### *Defendants Adopted an Unconstitutional Electioneering Order*

16.     On January 8, 2018, the Starr County Commissioners' Court adopted the Electioneering Order. The Electioneering Order constituted an official policy and practice of Starr County.

17.     The Electioneering Order stated that Starr County "desires to regulate the time, place and manner of electioneering by prohibiting electioneering during any 'voting period' as

defined by the Texas Election Code in or on property owned or under the care, custody and control of the County of Starr."

18.     On January 26, 2018 and February 1, 2018, Plaintiffs sent letters to Defendant OMAR ESCOBAR, JR. and copied all Defendants who serve on the Commissioners' Court.  In those letters, Plaintiffs stated their intent to engage in electioneering activities beyond the 100-foot marker as permitted under the Texas Election Code and asked whether their planned activities violated the Electioneering Order.

19.     Plaintiffs did not receive a response from Defendants.

### *Defendants Adopted an Unconstitutional Policy*

20.     At a February 12, 2018 meeting, the Starr County Commissioners' Court adopted a Building and Property Use Policy that incorporated the Electioneering Order.

21.     Among other things, the February 12, 2018 Policy prohibited electioneering on parking lots of five county properties:  La Rosita Commissioner Precinct #1, El Cenizo, Starr County Annex, La Victoria Community Center, and the Starr County Courthouse.

22.     Pursuant to Section 13 of the February 12, 2018 Policy, Plaintiffs were required to apply for a permit to use all "common areas" on county property.  "Common areas" as defined in the Policy included all county property except for the parking lots on the five county properties listed in the Policy.

23.     To apply for a permit, Plaintiffs were required to be at least 21 years old, state the purpose for which the county property would be used, sign a release of liability, and have their application notarized by a Texas public notary public.  The Policy also required Plaintiffs to submit permit applications to the Starr County Judge at least 30 days prior to the intended use date.

24.     For their application to be valid, Plaintiffs were required to pay a $50 deposit. The deposit amount to use the Starr County Courthouse "rang[ed] from $0-1,000." The Policy also imposed after-hour fees and did not define or limit the amount of such fees.

25.     Under the February 12, 2018 Policy, Plaintiffs had to apply for a permit to the Starr County Commissioners' Court or the office of Defendant ELOY VERA.

26.     The February 12, 2018 Policy granted Defendants unfettered discretion to deny permit applications, to determine the deposit amount, to refund the applicable deposit, and to waive or modify the Policy's requirements.

***Defendants Expressed Their Intent to Enforce the Electioneering Order and the Policy, Despite Concerns of the Texas Secretary of State***

27.     On February 12, 2018, Plaintiff HILDA GONZALEZ GARZA emailed the Texas Secretary of State's Elections Division to inquire about the legality of the Electioneering Order.  In response, Christina Adkins, Legal Director of the Elections Division at the Texas Secretary of State's Office, emailed Plaintiff GARZA, stating that:

> Section 61.003 of the Texas Election Code specifically states that any entity that owns or controls a public building that is used as a polling place cannot prohibit electioneering on the premises.  The resolution from Starr County appears to prohibit electioneering entirely, not just provide regulations as to the time, place, and manner of electioneering.  It appears as though this would be in conflict with 61.003 (a-1) of the code.

28.     On February 15, 2018, Sam Taylor, the Communications Director of the Texas Secretary of State's Office stated publicly:  "The election code is very clear that they may not ban or prohibit at any time electioneering on the building's premises outside of that 100-foot mark."  Mr. Taylor's comments were published locally in *The Monitor* newspaper.

29.     Also on February 15, 2018, Defendant OMAR ESCOBAR, JR. responded to the public position of the Texas Secretary of State's Office.  Defendant ESCOBAR, JR. maintained

that the Starr County electioneering ban was a reasonable regulation by stating: "I don't see that anybody's rights are being violated[.]"

30.     On February 16, 2018, Defendant OMAR ESCOBAR JR. posted on his official Facebook page a message that stated in part: "Electioneering continues to be prohibited in all designated county parking zones. Once again, persons may request a permit to use non-parking areas for any allowed purpose. As of yet, neither the Starr County Commissioners' Court nor the Starr County Judge's Office have granted and they are not required to grant a permit to anyone requesting use of public property."

31.     On February 20, 18, Sam Taylor, the Communications Director of the Secretary of State's Office, further reiterated that the Election Code "says that [Defendants] may enact reasonable regulations concerning the time, place and manner of electioneering. But a reasonable regulation is not an outright ban. So, it's very important to make that distinction as to what a reasonable regulation is." Mr. Taylor's comments were published locally by *KRGV Channel 5 News* on its website.

32.     In response to Mr. Taylor's public statements, on February 20, 2018, Defendant OMAR ESCOBAR, JR. stated: "Well, somebody would have to challenge the resolution, or challenge the laws, or challenge the policies, and up to now, we don't have a lawsuit, so nobody is challenging the policies." Mr. Escobar's comments were published locally by *KRGV Channel 5 News* on its website.

***Defendants Enforced the Electioneering Order and the February 12, 2018 Policy During the Primary Election Voting Period***

33.     Each election cycle, Starr County residents assemble and electioneer on county property during the voting period. Residents post and hold up signs, distribute brochures,

verbally advocate for propositions and candidates, display car bumper stickers, and wear campaign t-shirts, among other electioneering activities.

34.     To facilitate their electioneering activities, campaign staff and volunteers in Starr County regularly bring barbeque grills, distribute food plates, water and sodas, and set up tents outside polling places, including on county-owned property.

35.     For years, Plaintiffs have electioneered peacefully and advocated for policies, political parties, and candidates of their choice.  Plaintiffs regularly wear t-shirts supporting their candidates of choice, hold up political signs, distribute campaign brochures, provide information to voters about candidates, and answer any questions from voters and neighbors about those candidates.

36.     Plaintiffs have assembled peacefully and engaged in these electioneering activities during the voting period on county property, including in parking lots and park areas, on sidewalks, and outside polling places.

37.     When assembling and electioneering at polling places, Plaintiffs remain beyond the 100-foot distance from the outside door as required by the Texas Election Code.

38.     Campaign workers, volunteers, and politically-active residents also wear and display political signage during election season at non-polling locations owned by Starr County. For example, campaign workers travel to vote-counting locations such as the County Courthouse Annex and display political signs, wear political t-shirts, and park vehicles with political displays or bumper stickers.

39.     During the 2018 primary election voting periods, Plaintiff HILDA GONZALEZ GARZA engaged in her regular electioneering activities including, but not limited to, wearing t-shirts with political messaging in support of Democratic candidates, distributing ballot

information and copies of the U.S. Constitution to voters, encouraging people to vote, and displaying political bumper stickers on her car.  Plaintiff GARZA assembled and engaged in these activities on county property, including at polling places beyond the 100-foot marker as permitted by the Texas Election Code.

40.     As a candidate running in the 2018 primary election for Precinct Chair for Starr County Precinct No. 10, Plaintiff HILDA GONZALEZ GARZA also stood outside of polling places (beyond the 100-foot marker) distributing sample ballots to voters and asking voters to cast their ballot for her.

41.     On February 20, 2018, the first day of early voting in the March 2018 primary election, Starr County Elections Director John Lee Rodriguez directed at least one Starr County employee and at least one Starr County official with political bumper stickers or displays on their vehicles to remove their vehicles from the Courthouse parking lot or cover their political displays.  Those vehicles were parked at the Starr County Courthouse beyond the 100-foot marker.

42.     On February 20, 2018, Plaintiff HILDA GONZALEZ GARZA arrived at the Starr County Courthouse intending to electioneer.  After she arrived, Plaintiff GARZA saw one of her former high school classmates, who works at the Courthouse, walking quickly in the parking lot toward her former classmate's car, which was located beyond the 100-foot zone. Plaintiff GARZA's friend told Plaintiff GARZA that Starr County Elections Director John Lee Rodriguez had directed Plaintiff GARZA's former classmate either to move her car or cover up the bumper sticker on the rear window of her car.  The bumper sticker advocated for the former classmate's brother, a candidate for Starr County Treasurer.

43.     Also on February 20, 2018, a Justice of the Peace, who also works at the Courthouse, approached Plaintiff HILDA GONZALEZ GARZA and asked her if she would help him cover up his re-election campaign displays on the two back side windows of his truck.  His truck was parked beyond the 100-foot marker.  The Justice of the Peace told Plaintiff GARZA that Starr County Elections Director John Lee Rodriguez had directed him to cover up the campaign displays on the car.  Plaintiff GARZA helped the Justice of the Peace cover up the political displays on his truck so that he would not have to move his truck out of the parking lot.

44.     After Plaintiff HILDA GONZALEZ GARZA helped the Justice of the Peace cover up the political displays on his truck, she left the County Courthouse parking lot because she feared arrest under the electioneering ban as a result of her electioneering activities and having political bumper stickers on her car.  Plaintiff GARZA had originally intended to be present and electioneer at the County Courthouse all day.

45.     On February 24, 2018, Plaintiff HILDA GONZALEZ GARZA again went to the County Courthouse intending to electioneer.  Plaintiff GARZA spoke to a candidate who stood on the sidewalk beyond the 100-foot marker.  The candidate told Plaintiff GARZA that the Sheriff's Office had asked the candidate to leave the parking lot earlier that day because she was wearing a political t-shirt.

46.     Also on February 24, 2018, while Plaintiff GARZA was standing on the sidewalk outside the 100-foot marker wearing a t-shirt in support of a candidate, two Starr County Deputy Sheriffs approached Plaintiff GARZA and told her to leave, pointing to her t-shirt.  No county officials asked a friend of Plaintiff GARZA, who was also standing on the sidewalk but was not wearing a political t-shirt, to leave.  Neither Plaintiff GARZA nor her friend had applied for a permit under the County's Policy.

*The Court Found that the Electioneering Order Has No Force or Effect*

47.     On February 26, 2018, the U.S. District Court for the Southern District of Texas held a hearing on Plaintiffs' Emergency Application for a Temporary Restraining Order.

48.     At the February 26, 2018 hearing, the Court declared Defendants' Electioneering Order unconstitutionally vague.   The Court also found that the Electioneering Order "is a document that expresses only the desires of the county and it contains no language actually adopting any order or rule" and that if the Electioneering Order "were actually something enforceable it would be *ultra vires*."

49.     Two days later, on February 28, 2018, the Court issued a written decision partially granting Plaintiffs' Emergency Application for a Temporary Restraining Order.

50.     In its order, the Court reiterated that the Electioneering Order "adopts only the County's desires" and held that the February 12, 2018 Policy's provision incorporating the Electioneering Order is surplusage and the language of the Policy controls.

51.     The Court enjoined Section 13 of the February 12, 2018 Policy in its entirety.

*Defendants Continued to Enforce the February 12, 2018 Policy*

52.     On March 6, 2018, at the El Cenizo polling location, residents wishing to electioneer on the grassy areas and sidewalks at El Cenizo were asked by the Starr County Sheriff's Office to leave the property.

53.     Sergeant Armando Treviño advised Sheriff Deputy Esmeralda Muñiz, who was at the El Cenizo polling location on March 6, 2018, that no one was permitted to electioneer on the El Cenizo property.   As a result, Deputy Muñiz told the residents who had assembled there to leave.   Deputy Muñiz was not aware of the Temporary Restraining Order by the Starr County Sheriff's Office.   Deputy Muñiz subsequently allowed residents to stand on the lawns and grassy

12

areas of the property after being informed of the Temporary Restraining Order by Plaintiff GARZA.

54.    As of the date of the filing of this Second Amended Complaint, Defendants maintain the Electioneering Order and the February 12, 2018 Policy on the Starr County official website.

### *Defendants Adopted a New, Flawed Policy*

55.    At its April 9, 2018 meeting, the Starr County Commissioners' Court adopted modifications to the Policy.  The Policy remains in effect as of the date of the filing of this Second Amended Complaint.

56.    Defendants adopted the Policy without public discussion.

57.    The Policy constitutes an official policy and practice of Starr County.

58.    The Policy regulates public use of all county property.

59.    The Policy is not limited to use of county property during a voting period.

60.    The term "use" under the Policy includes use for electioneering purposes.

61.    Electioneering includes verbal advocacy for a particular candidate, measure, or political party.  Pursuant to the Texas Election Code, electioneering also includes the posting, use, or distribution of political signs or literature.

62.    Any violation of the Policy will result in removal from the premises and prosecution "to the fullest extent of the law."

63.    The Policy "supersedes previously enacted policies concerning the use of Starr County buildings and property."  However, the Policy states that all policies "not in conflict with the provisions of [the Policy] shall remain in full force and effect."

64.     As of April 30, 2018, more than three weeks after the enactment of the Policy, Defendants have not published the Policy on the County's official website and have not otherwise publicly posted the Policy.

65.     The Policy distinguishes between and imposes separate rules on the following types of county property:  (1) "Parking Lots" and "Parking Zones," (2) six county properties listed on Attachment A of the Policy, (3) the Starr County Courthouse, (4) "Public Spaces," and (5) all other county property not specifically covered in items (1) through (4).

Parking Lots and Parking Zones

66.     The Policy defines "Parking Lot" as "a dedicated paved area delineated by road surface markings which are intended for parking vehicles."

67.     The Policy defines "Parking Zone" as "an unpaved area designated for parking vehicles" and states that "Parking Zones shall be those shown in Attachment 'D'" of the Policy.

68.     Attachment D shows maps of the following parks and other county properties: the Starr County Courthouse, El Cenizo, La Rosita Commissioner Precinct #1, Starr County Courthouse Annex, Clemente Alaniz Garceno Park, La Rosita Park, Escobares Park, Salineno Park, Roma Community Park, Lino & Eloy Zarate Park, Alto Bonito Park, La Casita Park, Fort Ringgold Park, Starr County San Antonio St. Park, and Abel N. Gonzalez Park.

69.     On these maps, red lines delineate the boundaries of what the County appears to designate as Parking Zones.  The maps also bear a mark of "PZ" in red ink.

70.     In some cases, the red markings delineate sidewalks, streets, and unpaved or grassy areas on or adjacent to county parks.

71.     Attachment D contains two different maps of La Rosita with boundaries delineating two different Parking Zone areas.

72.     The Policy states that Parking Lots and Parking Zones "are to be used strictly for public and government automobile parking purposes and to effect the business of the Government buildings which they serve."  Only "county or government vehicles serving an official purpose" and "passenger vehicles" are authorized in Parking Lots and Parking Zones. On these authorized vehicles, Starr County residents may "display political signs attached to the vehicles in accordance with the Texas Election Code."

73.     Upon information and belief, some Parking Lots and Parking Zones extend beyond 100 feet from the doors of the county buildings.  For example, the distance from the outside door to the edge of County property is approximately 153 feet at the County Courthouse, 468 feet at the La Victoria Community Center-Zarate Park site, approximately 155 feet at the La Rosita Commissioner Precinct #1 site, and approximately 232 feet at the El Cenizo site.

74.     The Policy's restrictions on areas designated as Parking Lots and Parking Zones apply regardless of whether the Parking Lot or Parking Zone's perimeter reaches outside the 100-foot marker under the Texas Election Code.

Properties in Attachment A

75.     The Policy restricts the use of "buildings and facilities" in Attachment A to those who have obtained a permit by applying to the Starr County Commissioners' Court or Defendant ELOY VERA's office.

76.     Attachment A lists the following six properties:  Starr County Courthouse, Starr County Fairgrounds, El Cenizo Park Community Center, La Rosita Library, Starr County Annex Conference Room, and Zarate Park Community Center.

77.     The Policy defines "buildings and facilities" as "including, but not limited to, formal meeting spaces, porticos, and greens."

78.     The Policy states that properties listed in Attachment A may be used only "for events that support a public purpose, benefit, service, training, or interest to Starr County residents."   The Policy does not define "public purpose, benefit, service, training, or interest to Starr County residents."

79.     The Policy states the following incomplete sentence:  "Starr County has the right to refuse use of facilities to any group of person if the."

80.     Under the Policy, a person who wishes to apply for a permit must complete a three-page Request for Use of Starr County Facilities.

81.     Under the Policy, Defendant ELOY VERA is the buildings and facility manager.

82.     Applications must be submitted to Defendant ELOY VERA "not less than thirty (30) days prior to the intended use date."

83.     The Policy grants Defendant ELOY VERA the unfettered discretion to accept an application less than 30 days prior to the intended use "if the circumstances allow for the intended use."

84.     To apply for a permit, the applicant must be at least 21 years of age, state the purpose for which the county property will be used, sign a release of liability, and have the applicant's signature notarized by a Texas notary public.

85.     The applicant must pay a deposit of $50.00 to apply to speak or assemble on any county property listed in Attachment A.

86.     An application deposit "may be refunded" 14 days after the scheduled use of the facility.

87.     The Policy also imposes after-hour fees of $25 per hour for use of county property in Attachment A after regular working hours, *i.e.*, Monday through Friday from 8:00 a.m. to 5:00 p.m.

88.     A permit application is "not valid until all fees are paid."

89.     The Policy grants the Commissioners' Court the discretion to waive fees "if they determine that the County is receiving fair value by allowing the use of its facilities."  The Policy does not define the parameters of what constitutes fair value.

90.     The Policy provides that all users "may be required to have a licensed peace officer, or Starr County contracted security services, at their event."  The Policy does not specify under what circumstances these services "may be required."

91.     The Policy requires "proper attire of shirts and shoes" during use of county property.

92.     The Policy states that "[d]epositing or posting handbills, flyers, pamphlets, signs, posters, placards [sic], or other literature, except for Governmental notices and announcements" are prohibited on county "grounds, walks, driveways, parking and maneuvering areas, exteriors of buildings, and other structures, or on the floors, walls, stairs, racks, counters, desks, writing tables, window ledges, or furnishings in interior public areas on County premises . . . ."

93.     The Policy's permit requirements for use of county property in Attachment A apply regardless of whether areas in these properties encroach within the 100-foot marker under the Texas Election Code.

94.     The Policy provides that "[t]he Commissioners' Court retains the right to waive or modify any of the requirements of this Policy" when it determines that the waiver and/or

17

modification:  is necessary in order to serve the public interest, will allow use which will continue to meet the intent of this Policy, and will not violate any applicable statutory requirements.

95.     The Policy does not state how an applicant may apply for a waiver or modification of the requirements of the Policy.

96.     The Policy also does not state the process for how the Commissioners' Court will consider a waiver application.

Starr County Courthouse

97.     All the permit requirements on paragraphs 75 to 96 above apply to the Starr County Courthouse.  However, the Policy states specific additional rules applicable only to the Starr County Courthouse.   The Policy states that "specific guidelines and regulations in Attachment 'B' control the use of the Starr County Courthouse in addition to those listed herein," but "Attachment 'B' supersedes any regulation in this policy to the extent any conflict exists."

98.     Under the Policy, any person who is "approved to use [the Courthouse] may be required, at the sole discretion of the Commissioner's Court, to tender a deposit ranging from $0 - $1,000."

99.     The amount of the deposit for use of an area at the Starr County Courthouse "shall be determined by the Starr County Judge."

100.     The Policy does not allow "displays or exhibitions" on the grass areas of the Starr County Courthouse.

101.     The display of some category of signs, such as personal notices, community event announcements, and funeral announcements, is prohibited at the Starr County Courthouse "except in areas designated by the Commissioners' Court."

18

102.   Groups or individuals who wish to use the Starr County Courthouse or its grounds must complete a "Starr County Courthouse Public Use Request" form and seek approval by the Commissioners' Court.

103.   As of the date of the filing of this Second Amended Complaint, Defendants have not published on their website or otherwise publicly made available the "Starr County Courthouse Public Use Request" form.

104.   Under the Policy, the Commissioner's Court may impose additional restrictions and regulations for approved use of the Courthouse "on a case by case basis."  The Policy does not specify the additional restrictions or regulations or the process by which they are imposed.

Public spaces

105.   The Policy states that "[s]idewalks on County property and County Parks are considered 'public spaces.'"

106.   "County Parks" are those listed in Attachment C of the Policy as follows: Clemente Alaniz Garceno Park, La Rosita Park, Escobares Park, Salineno Park, Roma Community Park, Lino & Eloy Zarate Park in La Victoria, Alto Bonito Park, La Casita Park, Fort Ringgold Park, Starr County San Antonio Street Park, and Abel N. Gonzalez Park.

107.   The Policy does not require Plaintiffs to obtain a permit to use sidewalks on county property.

108.   The Policy does not require Plaintiffs to obtain a permit to use the following county parks at any time: Clemente Alaniz Garceno Park, La Rosita Park, Escobares Park, Salineno Park, Roma Community Park, Lino & Eloy Zarate Park in La Victoria, and Starr County San Antonio Street Park.

109.    The Policy does not require Plaintiffs to apply for a permit to use the following parks during regular business hours:  Alto Bonito Park, La Casita Park, Fort Ringgold Park, and Abel N. Gonzalez Park.  However, to use these four parks after hours, Plaintiffs must apply for a permit.  "After hours" is defined differently for each park under Attachment C of the Policy.

110.    Certain activities are prohibited in "public spaces."

111.    For example, "[d]epositing or posting" signs, flyers, and other literature is prohibited "except for Government notices and announcements."  "Depositing" and "posting" does not include holding or distributing material.

112.    Soliciting alms and contributions and commercial solicitation in public spaces is prohibited.

113.    "Peaceful" picketing and leafletting is allowed in public spaces.

114.    Plaintiffs cannot use county property, including sidewalks and parks, on county holidays.  The Policy states that "County facilities are not available for use on County holidays," and if the holiday falls on a Monday or Friday, "the weekend preceding or the weekend following the holiday" is considered a holiday as well.  The term "facilities" as defined under the Policy includes "structures and surrounding property," including sidewalks and parks.

115.    Election Day, November 6, 2018, is a county holiday.

116.    Other county holidays include Memorial Day (May 28, 2018), Independence Day (July 4, 2018), Labor Day (September 3, 2018), and Veterans Day (November 12, 2018)

117.    The Policy's restrictions on "public spaces" apply regardless of whether these areas encroach within the 100-foot marker under the Texas Election Code.

<u>All other county property</u>

118.     The County prohibits all speech and assembly on all county property not addressed by the Policy, such as properties not listed in Attachments A, B, and C or that do not fall under the definition of "Parking Lots," "Parking Zones," and "Public Spaces."

119.     Specifically, the Policy states that "[b]uildings and facilities that are excluded from Attachment A are not available for use by private citizens unless otherwise allowed under this Policy."

120.     Upon information and belief, Starr County owns property excluded from Attachment A and not otherwise addressed by the Policy, including, but not limited to, the Starr County Commissioners' offices, the Falcon County Park, the Starr County Veterans' Memorial, the Starr County Adult Probation Office, the Starr County Sheriff's Office, the Starr County Memorial Hospital, the Starr County War Dead Memorial, as well as other structures and surrounding property, such as cemeteries, community centers, county offices, lawns, and public streets.

121.     Plaintiffs regularly visit some or all of these properties to conduct business and to use these properties to assemble and speak about issues of public concern in the Starr County community.

***Plaintiffs Fear Injury From Defendants' Enforcement***

122.     Plaintiff HILDA GONZALEZ GARZA has been denied the right to electioneer outside the 100-foot marker as permitted by the Texas Election Code, and she has observed others being denied that right during the voting period.  Plaintiff GARZA fears she will be fined or arrested if she assembles and electioneers during the Democratic runoff election in May 2018, the General Election in November 2018, and subsequent elections.

123.    As a practicing attorney, Plaintiff HILDA GONZALEZ GARZA visits the County Courthouse on behalf of clients who have cases pending in court.  She fears she will be cited or arrested on county property when she conducts regular business at the courthouse because she displays political messages on her clothing.   Plaintiff HILDA GONZALEZ GARZA further fears that she will be cited or arrested when she assembles peaceably and engages in speech at the County Courthouse about issues of concern to her, including during candlelight vigils and public gatherings in support of matters of public concern, such as child abuse and drug use awareness, for example.

124.    Plaintiff HILDA GONZALEZ GARZA also visits properties subject to regulation under the Policy that are not the County Courthouse and she fears she will be cited or arrested on these county properties when she conducts regular business at these properties or when she assembles peaceably and engages in speech about issues of concern to her, such as health care access and religious celebrations.

125.    Plaintiff ROSBELL BARRERA's electioneering activities include wearing t-shirts promoting his preferred candidates and political party.  Plaintiff ROSBELL BARRERA occasionally wears these t-shirts while conducting his daily business in Starr County, including visiting county property subject to regulation under the Policy, including during voting periods. On election night, Plaintiff ROSBELL BARRERA assembles at and wears electioneering t-shirts to the Starr County Courthouse Annex where votes are tabulated.   Plaintiff ROSBELL BARRERA fears arrest and prosecution under the Policy for his assembly and electioneering activities on county property subject to regulation under the Policy.

126.    Plaintiffs regard assembly and electioneering as part of their civic duty and will assemble and electioneer on county property subject to regulation under the Policy, as they have

done for many years, during the voting periods for the 2018 runoff and general elections and future elections.

127.    Plaintiffs fear that if they assemble and engage in electioneering activities on county property subject to regulation under the Policy they will be subject to arrest and punishment under the Policy.

128.    In the many years in which Starr County residents have engaged in peaceful assembly and electioneering on county property, county governmental operations have not been disrupted.  Similarly, there have been no health or safety problems caused by peaceful assembly and electioneering.

129.    To the contrary, assembly and electioneering activities on county property allow voters to learn more about the candidates, share their views and make informed decisions on how to cast their ballots.

130.    In the many years Plaintiffs have engaged in these activities, they have not observed intimidation or harassment of voters on property owned by Starr County beyond the 100-foot marker.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Starr County's Policy Abridges Plaintiffs' Free Speech Rights in Violation of the U.S. Constitution**

131.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs of this Second Amended Complaint as though fully set forth here.

132.    The First Amendment to the U.S. Constitution provides: "Congress shall make no law . . . abridging the freedom of speech[.]"

133.     The free speech guarantee of the First Amendment is made applicable to the states through the Fourteenth Amendment, which provides "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

134.     Defendants' Policy abridges political speech that lies at the core of the protections afforded by the First Amendment.

135.     Defendants' Policy is not narrowly tailored to serve a compelling or significant government interest.

136.     Defendants' Policy is not a reasonable time, place, and manner regulation of protected speech.

137.     Defendants' Policy is unconstitutionally overbroad.

138.     Defendants' Policy is unconstitutionally vague.

## SECOND CAUSE OF ACTION

**Starr County's Policy Abridges Plaintiffs' Rights to Assemble Peaceably in Violation of the U.S. Constitution**

139.     Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs of this Second Amended Complaint as though fully set forth here.

140.     The First Amendment to the U.S. Constitution provides: "Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble[.]"

141.     The First Amendment right peaceably to assemble is made applicable to the states through the Fourteenth Amendment, which provides "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any

state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

142.    Defendants' Policy abridges Plaintiffs' rights peaceably to assemble.

143.    Defendants' Policy is not narrowly tailored to serve a compelling or significant government interest.

144.    Defendants' Policy is not a reasonable time, place, and manner regulation.

145.    Defendants' Policy is unconstitutionally overbroad.

146.    Defendants' Policy is unconstitutionally vague.

## THIRD CAUSE OF ACTION

### Starr County's Policy Violates § 61.003 of the Texas Election Code

147.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs of this Second Amended Complaint as though fully set forth here.

148.    Texas Election Code § 61.003(a-1) provides that "[t]he entity that owns or controls a public building being used as a polling place may not, at any time during the voting period, prohibit electioneering on the building's premises outside of the area [within 100 feet of an outside door of a polling place], but may enact reasonable regulations concerning the time, place, and manner of electioneering."

149.    Starr County is subject to Section 61.003 of the Texas Election Code.

150.    Defendants' Policy violates Section 61.003(a-1) of the Texas Election Code, which prohibits electioneering within 100 feet of the door of a polling place and requires jurisdictions like Starr County to permit electioneering beyond the 100-foot zone subject to reasonable time, place and manner regulations.

151.    Defendants' Policy is not a reasonable time, place and manner regulation under Section 61.003 of the Texas Election Code.

## FOURTH CAUSE OF ACTION

### Starr County's Policy Constitutes *Ultra Vires* Activity

152.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs of this Second Amended Complaint as though fully set forth here.

153.    Under Texas law, an *ultra vires* suit may be brought against government officials acting without legal authority or failing to perform a purely ministerial act.

154.    Defendants are responsible for the administration of elections in Starr County, Texas and enforcement of laws related to elections.  Texas law both constrains Defendants' election authority and prescribes specific, ministerial acts for election administration that Defendants must perform.

155.    Defendants have acted without legal authority by adopting a policy expressly prohibited by Texas Election Code § 61.003 and by expressing their intention to enforce the Policy.  Defendants' actions are undertaken without legal authority and are *ultra vires*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1.    A declaratory judgment that Defendants' Policy, in its entirety, violates Plaintiffs' rights to free speech and peaceably to assemble as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution;

2.    A declaratory judgment that Defendants' Policy violates Section 61.003 of the Texas Election Code;

3.    A declaratory judgment that Defendants' Policy is *ultra vires*;

4.     A declaratory judgment that Defendants' Electioneering Order is unconstitutionally vague, of no force and effect, and *ultra vires*, as preliminarily held by this Court on February 26, 2018;

5.     An injunction prohibiting Defendants and their officials, employees, and agents from implementing or enforcing the Policy and the Electioneering Order;

6.     An order awarding Plaintiffs reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and any other applicable law; and

Such other and further relief as this Court deems just and proper.

Dated: May 1, 2018                      Respectfully submitted,

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
By: */s/  Nina Perales*
Nina Perales
State Bar No. 24005046
SDTX Bar No. 21127
nperales@maldef.org
Celina Moreno
State Bar No. 24074754
SDTX Bar No. 2867694
cmoreno@maldef.org
Alejandra Ávila
State Bar No. 24089252
SDTX Bar No. 2677912
aavila@maldef.org
110 Broadway, Suite 300
San Antonio, TX 78205
Tel: (210) 224-5476
Fax: (210) 224-5382

**TEXAS CIVIL RIGHTS PROJECT**
By: */s/ Efrén C. Olivares*
Efrén C. Olivares

State Bar No. 24065844
SDTX Bar No. 1015826
efren@texascivilrightsproject.org
Rebecca Harrison Stevens
State Bar No. 24065381*
beth@texascivilrightsproject.org
Emma E. Hilbert
SDTX Bar No. 2942270
emma@texascivilrightsproject.org
1017 W. Hackberry Ave.
Alamo, Texas 78516
Tel: (956) 787-8171
*Admitted *pro hac vice*

Attorneys for Plaintiffs HILDA GONZALEZ
GARZA and ROSBELL BARRERA

### Certificate of Service

The undersigned counsel hereby certifies that, on the 1st day of May, 2018, she has electronically submitted a true and correct copy of the above and foregoing Second Amended Complaint via the Court's electronic filing system, which will serve a copy on all counsel of record for Defendants.

/s/ Alejandra Ávila
Alejandra Ávila