IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| HILDA GONZALEZ GARZA AND ROSBELL BARRERA,<br>*Plaintiffs,*<br><br>v.<br><br>STARR COUNTY, TEXAS; OMAR ESCOBAR, in his official capacity as District Attorney for the 229th Judicial District; VICTOR CANALES JR., in his official capacity as County Attorney for Starr County; ELOY VERA, in his official capacity as County Judge for Starr County; JAIME ALVAREZ, in his official capacity as Starr County Commissioner for Precinct 1; RAUL PEÑA, III, in his official capacity as Starr County Commissioner for Precinct 2; ELOY GARZA, in his official capacity as Starr County Commissioner for Precinct 3; RUBEN D. SAENZ, in his official capacity for Starr County Commissioner for Precinct 4; RENE "ORTA" FUENTES, in his official capacity as Sheriff for Starr County.<br>*Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 7:18-CV-00046 |

**DEFENDANTS' SECOND RESPONSE TO PLAINTIFFS' SECOND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COME NOW, Defendants, STARR COUNTY, TEXAS; OMAR ESCOBAR, in his official capacity as District Attorney for the 229th Judicial District; VICTOR CANALES JR., in his official capacity as County Attorney for S tarr County; ELOY VERA, in his official capacity as County Judge for  Starr County; JAIME ALVAREZ, in his official capacity as Starr County Commissioner for Precinct 1; RAUL PEÑA, III, in his official capacity as Starr County Commissioner for Precinct 2; ELOY GARZA, in his official capacity as Starr County Commissioner for Precinct 3; RUBEN D. SAENZ, in his official capacity for Starr County Commissioner for Precinct 4; RENE "ORTA" FUENTES, in his official capacity as Sheriff for Starr County**,** and file this their Second Response

to Plaintiffs' Second Emergency Application for Temporary Restraining Order and respectfully show unto the Court the following:

## I. FACTS OF THE CASE

1. Plaintiffs complain about the Starr County Building and Property Use Policy [hereinafter "Use Policy"] properly enacted by the Commissioners' Court on April 9, 2018, and the Starr County Electioneering Regulations [hereinafter "Electioneering Regulations"] properly enacted by the Commissioners' Court on May 9, 2018. They allege that the Use Policy and Electioneering Regulations violate the First Amendment and the Texas Elections Code, and constitute *ultra vires* acts. In their Application for Temporary Restraining Order they allege their freedom of speech and right to freely assemble have been restricted and that they fear arrest or fines in exercising their First Amendment rights.

2. Starr County's Use Policy states that County buildings and facilities are "primarily used for official county functions" and declares that the County "intend[s] that these facilities be used to the fullest extent for these primary official purposes." (Doc. 36, Ex. A-1 at § 3(a)). Simply put, a courthouse is to be used as a courthouse, a park as a park, a hospital as a hospital, et cetera. However, the County has decided to make certain buildings and facilities available for private use through a permitting process which is set forth in the Use Policy and requires that an applicant complete a *one* page form along with a "Release of Liability". (Doc. 36, Ex. A-5). The Use Policy also makes clear that there are exemptions to certain types of use in particular properties owned and controlled by Starr County. *See* (Doc. 36, Ex. A-1 at § 3(b)). The Use Policy specifically exempts from this permitting process all sidewalks and parks, and affirmatively states that "[p]eaceful picketing and leafletting in [these] public spaces is permissible." *See* (Doc. 36, Ex. A-1 at § 12(a), (c)).

3. Starr County's Electioneering Regulations were enacted, in part, "to ensure that a polling place location is sufficiently available during a voting period" and "[t]o protect the voter and the integrity of the election process." (Doc. 36, Ex. A-8 at § 1(c)). To that end, Starr County has prohibited loitering and actively engaging in electioneering on sidewalks leading up to the entry of

buildings serving as polling locations. (Doc. 36, Ex. A-8 at § 4(f)). With the exception of limitations for firefighting and law enforcement, and the protection of access to polling sites, the Electioneering Regulations do not prohibit electioneering elsewhere outside the 100-foot buffer zone created by state law; all parks remain available for electioneering. *See generally* (Doc. 36, Ex. A-8). Furthermore, recognizing the limitations on space for electioneering at certain locations, Starr County has specifically created "Designated Areas for Electioneering," which allow electioneering on certain sidewalks and in a parking area. (Doc. 36, Ex. A-8 at § 2(b)). Electioneering in these "Designated Areas for Electioneering" is limited to use of signs that are no more than two-foot by two-foot (2' x 2'). (Doc. 36, Ex. A-8 at § 4(g)).

## II. ARGUMENT

4. A preliminary injunction is an "extraordinary and drastic remedy" available only upon a clear showing that the plaintiff is entitled to such relief. *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A plaintiff seeking a preliminary injunction must establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction [is] not granted; (3) that their substantial injury outweigh[s] the threatened harm to the party whom they seek to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest." *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012) (citation omitted). "[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F3d 570, 574 (5th Cir. 2012) (internal quotations omitted). The decision to grant a preliminary injunction "is the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

**A. Plaintiffs are unlikely to succeed on the merits**

5. Plaintiffs have not shown they are entitled to the relief they seek. First, they cannot show this matter is ripe for judicial review. Second, even if the Court decided this matter is justiciable, Plaintiffs cannot show that the neutral-content Use Policy and narrowly tailored Electioneering Regulations are unconstitutional or in violation of the Texas Election Code.

**a. Ripeness**

6. The doctrine of ripeness is designed, in part, "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized." *Abbott Laboratories v. Gardner*, 387 U.S. 136 148-49 (1967) *quoted in Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). The Court:

> should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical. The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.

*New Orleans Public Service, Inc. v. Council of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987) (internal citations omitted).

7. The Use Policy allows Plaintiffs to use certain County buildings and facilities through an application process. Plaintiffs must simply apply for a permit. Plaintiffs have not applied for permits, and, thus, no permits have been denied. Unless they can first show that the County has denied Plaintiffs access for their political speech, this case is not yet ripe for review.

**b. Constitutionality of the Use Policy**

8. When considering enjoining the enforcement of a statute, ordinance or policy enacted by a democratically elected body, "every reasonable construction must be resorted to in order to save [it] from unconstitutionality."*National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 563 (2012) *quoted in Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 895 (5th Cir. 2012). Furthermore, the interpretation of those charged with enforcing an ordinance and policy must be accorded some meaningful weight. *Cf. Andrade*, 488 F. App'x at 895; *see Bellotti v. Baird*, 428 U.S. 132, 143 (1976).

9. "Courts use the same rules that are used to construe statutes to construe municipal ordinances." *Bd. of Adjustment of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002) (citations omitted). To construe ordinances, the courts consider first the language of the ordinance, using

definitions prescribed by the legislative body and any technical or particular meaning of words; otherwise, the ordinance is construed according to the plain and common meaning of words, *unless* a contrary intention is apparent from the context or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (citations omitted) (emphasis added). It is presumed that the legislative body "intended a just and reasonable result". *City of Rockwall*, 246 S.W.3d at 626 (citation omitted).

10. In scrutinizing the Use Policy in this case, the Court must first determine the predominate purpose in enacting regulations involving the freedom of speech. "If [ ] the government's predominate purpose is unrelated to the suppression of expression, such that the regulation can be justified without reference to the content of the regulated speech, then intermediate scrutiny applies." *Fantasy Ranch, Inc. v. City of Arlington*, 459 F.3d 546, 554 (5th Cir. 2006) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* In this case, the County decided to adopt the Use Policy to address the maintenance and safety concerns that arise from the use of County facilities at all times, regardless of polling stations and voting periods. The County's Use Policy regulates the use of County property without reference to the content of speech; it is neutral concerning any speaker's point of view. The Use Policy is a neutral policy of general applicability which allows the County to develop, maintain and control its facilities to support County operations and services, in addition to safeguarding the safety of employees and citizens, and mitigating blight, distraction and nuisance. No court has found that these are not compelling government interests. Therefore, intermediate scrutiny applies.

11. Under intermediate scrutiny, "[1)] the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided [2)] the restrictions are justified without reference to the content of the regulated speech, [3)] that they are narrowly tailored to serve a

significant governmental interest, and [4]] that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)) (internal quotations omitted). Here, 1) the County's Use Policy regulates activities on County property, 2) including but not limited to electioneering, 3) for the safety of pedestrians in parking zones, to allow County buildings to be used for their primary and intended purposes, and to maintain County property free from blight and nuisance, and 4) encourages the use of areas not otherwise available to citizens through a permit.

12. Moreover, "the First Amendment does not guarantee access to government property simply because it is owned or controlled by the government." *United States Postal Service v. Greenburgh Civic Assns.*, 453 U.S. 114, 129 (1981). Rather, the "existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 44 (1983). Plaintiffs argue that the restrictions on speech on all county property should be treated the same, but there is no precedent for such a position.

13. Public property which is not by tradition or designation a forum for public communication may be reserved by the State "for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Education Assn.*, 460 U.S. at 46. Public forums include those places "which by long tradition or by government fiat have been devoted to assembly and debate," such as parks, streets, and sidewalks. *Id.* at 45; *cf. Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 814 (1984). "[O]n government property that has not been made a public forum, not all speech is equally situated, and the State may draw distinctions which relate to the special purpose for which the property is used." *Id.* at 54. "There is little doubt that in some circumstances the government may ban the entry on to public property that is not a 'public forum' of all persons except those who have legitimate business on the premises. *United States v. Grace*, 461 U.S. 171, 178(1983). Moreover, "[t]he incidental restriction on expression which results

from the City's attempt to [eliminate visual clutter] is considered justified as a reasonable regulation of the time, place, or manner of expression if it is narrowly tailored to serve that interest." *Taxpayers for Vincent*, 466 U.S. at 808 (citations omitted).

14. In this case, Plaintiffs have specifically identified seven areas of "concern": 1) the prohibition of speech and assembly on County holidays in public spaces, 2) the permitting process for use of parks after posted hours, 3) the permit application process, generally, 4) the permitting process for the Courthouse and the prohibition of setting displays *into* the Courthouse grounds, 5) the prohibition of depositing and posting signs in public spaces, 6) the exclusion of certain properties for private use, and 7) the prohibition of activities in parking lots and parking zones, and the designation of certain areas in parks as parking zones. For the reasons stated below, none of these pose genuine constitutional concerns.

15. Plaintiffs hold that the Use Policy abridges the rights to freedom of speech and to freely assemble on County holidays. But reading the Use Policy in such a way would yield an absurd result. The section at issue on this particular point, Section 3(d), limits the ability to reserve a building or facility on County holidays and obtain a permit as allowed under Section 3 of the Use Policy. The Use Policy does not prohibit citizens from using a sidewalk, on the contrary, it has excluded sidewalks from the permitting process. In construing the Use Policy, the Court should find that it would be absurd to interpret that the Use Policy prohibits speech and assembly on sidewalks during County holidays. This reasoning applies to parks as well, which are also excluded from the permitting process and that Section 12 specifically states will be open to the public at the posted times—which are listed in the Use Policy's Attachment C.

16. Plaintiffs object to the permitting requirement for after-hour use of County parks. However, the County has the obligation to keep citizens safe and, to that end, is entitled to close parks in the evening hours and require that citizens wishing to use these parks after-hours take on the costs for monitoring and safeguarding County property and its citizens.

17. Plaintiffs argue that the permitting process for use of County buildings, which are not traditional public fora, is burdensome. The application for a permit requires the completion of a *one*

page form and a release of liability, along with the payment of a refundable deposit and a fee of $25.00 for after-hour use only to allow the County to hire personnel to monitor and secure the premises. The County Judge, who is the ultimate authority of the County's executive branch, reviews applications. This simple process cannot be considered a burden considering that the County has to protect property, prevent or limit exposure to liability, determine the propriety of functions in certain fora, and allow for an orderly process to grant citizens access to County facilities.

18. Plaintiffs also take issue with the restrictions placed on the County Courthouse through the <u>Use Policy</u>. The application process for use of the County Courthouse is the same as the process for use of other County facilities, except that the County may require a deposit of up to $1,000.00. The Starr County Courthouse is a historic building and its preservation can be costly. Depending on the use of its spaces and the actual space that is requested for use, the County must obtain a deposit that would mitigate the costs to repair damages to the Courthouse; this is a compelling government interest: to protect County property and safeguard taxpayer dollars. Similarly, the County has prohibited the setting of displays *into* the grass surrounding the Courthouse; allowing signs or displays to be staked into the ground would result in damage to the greens, and the County has a right to preserve its property. Finally, the County must have discretion in imposing further restrictions to preserve the Courthouse and maintain order, *i.e.*, prohibit food in the courtrooms, limit access to areas where juries are deliberating, prohibit loud music or speakers in the Courthouse during business hours so as to not interfere with voting, et cetera. These further restrictions can only be defined until the County is made aware of the potential use of space in the Courthouse.

19. To prevent nuisance and blight, the County has decided that it will not allow unattended signs to be posted or deposited on County property. The County has specifically excluded holding and distributing material from such a prohibition, following the Supreme Court's guidance in *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984).

20. Plaintiffs complain that space in the Starr County Sheriff's Office and Starr County Adult Probation Office is not available for reservation and permitting, but the security concerns of allowing private use of these facilities far outweighs any interest citizens may have to use space in the

facilities when other fora are available for the exercise of their freedom of speech and right to freely assemble. Plaintiffs also complain that the Starr County War Dead Memorial is not available for private use, but the Memorial is not County property—it is a memorial dedicated by Rio Grande City. Finally Plaintiffs complain that the Falcon County Park and the Starr County Veterans Memorial and Cemetery are not public spaces as defined under the Use Policy or otherwise available for private use; however, as of the filing of this Response, the undersigned has been unable to confirm whether or not the Falcon County Party is subject to County control and can assure the Court that the County will begin the process of designating the Starr County Veterans Memorial and Cemetery as a public space which is not subject to the permitting process.

21. Starr County contends that parking lots are for parking, and on properties where parking lots do not exist or parking lots are insufficient for parking the County has created parking zones; designating areas for parking on County property cannot be considered unconstitutional. Attachment D of the Use Policy clearly shows parking lots and parking zones by enclosing the area with a solid line, and with dotted lines the County has delineated areas surrounding or adjoining certain venues where parking has been specifically allowed. Defendants dispute that these demarcations encroach on sidewalks, but certain grassy areas and areas adjacent to dirt and paved roads had to be specifically designated for parking to specify where citizens can park their vehicles.

### c. The Use Policy in light of the Texas Election Code

22. When County buildings are used as a polling place, the Texas Election Code prohibits electioneering within 100 feet of the entrance of the buildings. In this case, the County properties that are used as poling places are El Cenizo Park, La Rosita Community Center, La Victoria Community Center (or Zarate Park) and Starr County Courthouse. The Use Policy incidentally restricts the use of these properties outside the 100-foot buffer zone by prohibiting the use of parking lots at these locations and by prohibiting the staking of signs into the Courthouse grounds, nothing more. These incidental restrictions, to the extent they regulate time, place and manner of electioneering, are reasonable.

### d. Constitutionality of the Electioneering Regulations

23.. When considering enjoining the enforcement of a statute, ordinance or policy enacted by a democratically elected body, "every reasonable construction must be resorted to in order to save [it] from unconstitutionality."*National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 563 (2012) *quoted in Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 895 (5th Cir. 2012). Furthermore, the interpretation of those charged with enforcing an ordinance and policy must be accorded some meaningful weight. *Cf. Andrade*, 488 F. App'x at 895; *see Bellotti v. Baird*, 428 U.S. 132, 143 (1976).

24. "Courts use the same rules that are used to construe statutes to construe municipal ordinances." *Bd. of Adjustment of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002) (citations omitted). To construe ordinances, the courts consider first the language of the ordinance, using definitions prescribed by the legislative body and any technical or particular meaning of words; otherwise, the ordinance is construed according to the plain and common meaning of words, unless a contrary intention is apparent from the context or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (citations omitted). It is presumed that the legislative body "intended a just and reasonable result". *City of Rockwall*, 246 S.W.3d at 626 (citation omitted).

25. In public fora, the County may enforce a content-based exclusion to communicative activity by showing "that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45,(1983).

26. The Electioneering Regulations have several purposes: to prohibit the placement of unattended signs on County property outside the voting period, to prevent damage to County property by prohibiting signs to be attached, to allow uninterrupted access to polling locations by restricting loitering and electioneering on certain sidewalks, to prevent the obstruction of firefighting and law enforcement activities, and to provide citizens with areas for electioneering when they would otherwise have no opportunity to electioneer absent an exception.

27. The County may prohibit leaving unattended signs on property, improvements and

greenery. *See Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984). The County has a compelling interest in keeping property free from nuisance and blight, and prevent potentially unsafe obstructions to drivers and citizens traversing roads or sidewalks adjacent to County property. The County also has a compelling interest in protecting property and a prohibition against placement of signs into the ground is narrowly drawn by allowing citizens to hold signs and engage in peaceful picketing and leafleting.

28. The County also has a compelling interest in protecting voter access to polls by restricting active electioneering on sidewalks leading from the street and parking lots to the entrance of polling locations, while allowing electioneering on sidewalks that run parallel to public passageways that would not obstruct access to polling locations. *See United States v. Kokinda*, 497 U.S. 720, 727 (1990) (distinguishing a sidewalk leading from a parking area to the front door from a sidewalk running parallel to a public street); *cf. Schirmer v. Edwards*, 2 F.3d 117, 121(5th Cir. 1993) (concluding that the government has a compelling interest in protecting its citizens' right to vote and allowing a 600-foot electioneering-free buffer zone); *see also Burson v. Freeman*, 504 U.S. 191, 214-16 (1992) (Scalia, J., concurring) (stating that areas adjacent to functioning polling places are not quintessential public forums and that "sidewalks around polling places have traditionally *not* been devoted to assembly and debate). The County has weighed the interest in allowing unimpeded access to polling sites with the interest of the public to engage in electioneering by creating Designated Areas for Electioneering.

29. The County has a compelling interest in maintaining sufficient space for firefighters to have unobstructed ingress and egress from fire stations. The safe ingress and egress of buildings is also a compelling interest, and County officials should have the ability to re-direct electioneering activities that impede safe access to buildings. *Cf. Adderly v. Florida*, 385 U.S. 39, 47 (1966) (finding no unconstitutional deprivation of rights where sheriff objected to presence on part of jail grounds reserved for jail uses).

30. The <u>Electioneering Regulations</u> have been narrowly tailored to address the County's compelling interests during voting periods.

### e. The Electioneering Regulations in light of the Texas Election Code

31. Pursuant to Section 61.003(a-1) of the Texas Election Code, the County has the authority to "enact reasonable regulations concerning the time, place, and manner of electioneering." The County has decided to do so through its Electioneering Regulations. Defendants hereby incorporate by reference Paragraphs 26 through 29, which support the reasonableness of the regulations enacted by Starr County. Moreover, Defendants would show that the Texas Secretary of State's Election Advisory Opinion No. 2017-14 supports the County's Electioneering Regulations by providing, as an example, the authority to "prohibit[] electioneering on sidewalks or driveways to keep them clear for pedestrians and traffic." (Doc. 14, Ex. B). The Electioneering Regulations do precisely what the Texas Secretary of State has declared as reasonable under the Texas Election Code. Therefore, the Electioneering Regulations do not violate the Texas Election Code.

### f. The County acted within its authority, not *ultra vires*

32. To assert an *ultra vires* claim, a suit must not complain of a government officer's exercise of discretion, but of "*either* an officer's failure to perform a ministerial act *or* an officer's exercise of [ ] *limited* discretion without reference to or in conflict with the constraints of the law." *Houston Belt & Terminal Ry. Co.* v. *City of Houston,* 487 S.W.3d 154, 163 (Tex. 2016) (emphasis in original). Here, Plaintiffs have failed to identify the ministerial act(s) or exercise of limited discretion that are *ultra vires*.

## B. There is no threat of irreparable injury

33. The County allows unimpeded access to sidewalks and parks for Plaintiffs' exercise of their First Amendment rights throughout the year, and provides them with spaces to electioneer without interfering with other citizens' access to polling locations. Contrary to Plaintiffs' assertion, the County's Use Policy and Electioneering Regulations do not hinder civic participation and political engagement. To date, neither Plaintiff has suffered any damage or injury, and cannot show that any such injury will result without the Court's intervention.

## C. An injunction stops the County from protecting the public and government property

34. The County has a duty to preserve the general health and welfare of citizens, and

obligation to enact regulations to that end. The County has established policies and regulations to address the maintenance and safety concerns that arise from the use of County property. To enjoin the enforcement of the policy and regulations would harm the citizens of Starr County and disserve the public interest. Several Texas jurisdictions have found the regulation of use of public property is in the best interest of its citizens, and Starr County is just one among them. *See* Sec. 10.52, Code of Ordinances of the City of Allen ("It is an offense for any person to engage in electioneering on driveways, parking areas, on medians within parking areas, or driveways on the premises of a polling location."); Sec. 19-106, Code of Ordinances of the City of Cedar Hill ("It is an offense for any person to engage in electioneering or loitering in or on driveways, parking areas, on medians within parking areas, or driveways on the premises of public property used as a polling location, or outside of designated electioneering areas on public property used as a polling location."); Sec. 70-43, Code of Ordinances of the City of Kerrville ("It is unlawful for a person to engage in electioneering on driveways at a polling place."); Sec. 13-192, Code of Ordinances of the City of Richardson ("It is an offense for any person to engage in electioneering on driveways, parking areas, on medians within parking areas, or driveways on the premises of a polling location."); Sec. 74-173, Code of Ordinances of the City of Wylie ("It is an offense for any person to engage in electioneering on driveways, parking areas, on medians within parking areas, or driveways on the premises of a polling location."). Considering that there has been no harm to Plaintiffs, the risks to the citizens of Starr County weigh heavily against an injunction.

### III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants, STARR COUNTY, TEXAS; OMAR ESCOBAR, in his official capacity as District Attorney for the 229th Judicial District; VICTOR CANALES JR., in his official capacity as County Attorney for Starr County; ELOY VERA, in his official capacity as County Judge for Starr County; JAIME ALVAREZ, in his official capacity as Starr County Commissioner for Precinct 1; RAUL PEÑA, III, in his official capacity as Starr County Commissioner for Precinct 2; ELOY GARZA, in his official capacity as Starr County Commissioner for Precinct 3; RUBEN D. SAENZ, in his official capacity for Starr County

Commissioner for Precinct 4; RENE "ORTA" FUENTES, in his official capacity as Sheriff for Starr County, pray that this Court deny Plaintiffs' request for injunctive relief, dismiss Defendants, order that Defendants recover all costs incurred herein, and grant that Defendants have such other and further relief, at law or in equity, to which they may show themselves to be justly entitled.

    Respectfully submitted,

By:   */s/ Ysmael D. Fonseca*
    Eileen M. Leeds
    State Bar No. 00791093
    USDC Adm. No. 16799
    Email: eleeds@guerraleeds.com
    *Attorney In Charge*
    Ysmael D. Fonseca
    State Bar No. 240697926
    USDC Adm. No. 1139283
    Email: yfonseca@guerraleeds.com
    *Of Counsel*

    Guerra, Leeds, Sabo & Hernandez, P.L.L.C.
    1534 East 6th Street, Suite 200
    Brownsville, Texas 78520
    Telephone: 956-541-1846
    Facsimile: 956-541-1893
    *Of Counsel*

**ATTORNEYS FOR DEFENDANTS**
STARR COUNTY, TEXAS;
OMAR ESCOBAR, in his official capacity as District Attorney for the 229th Judicial District; VICTOR CANALES JR., in his official capacity as County Attorney for Starr County; ELOY VERA, in his official capacity as County Judge for Starr County; JAIME ALVAREZ, in his official capacity as Starr County Commissioner for Precinct 1; RAUL PEÑA, III, in his official capacity as Starr County Commissioner for Precinct 2; ELOY GARZA, in his official capacity as Starr County Commissioner for Precinct 3; RUBEN D. SAENZ, in his official capacity for Starr County Commissioner for Precinct 4; RENE "ORTA" FUENTES, in his official capacity as Sheriff for Starr County

## CERTIFICATE OF CONFERENCE

Pursuant to LR 7.1 D, a certificate of conference is not required.

>                /s/ Ysmael D. Fonseca
>                Ysmael D. Fonseca

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of May, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

*Via CM/ECF*
Ms. Nina Peralez
Ms. Celina Moreno
Ms. Alejandra Avila
Mexican American Legal Defense
and Educational Fund
110 Broadway, Suite 300
San Antonio, TX 78205

*Via CM/ECF*
Mr. Efren C. Olivares
Ms. Rebecca Harrison Stevens
Texas Civil Rights Project
1017 W. Hackberry Ave.
Alamo, Texas 78516

*Via CM/ECF*
Mr. J.M. Alvarez
Alvarez Law Firm
50 N. Britton Ave.
Rio Grande City, Texas 78582

>                /s/ Ysmael D. Fonseca
>                Ysmael D. Fonseca