IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| HILDA GONZALEZ GARZA and § | |
| ROSBELL BARRERA § | |
|     Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. 7:18-cv-00046 |
| § | |
| STARR COUNTY, *et al.*, § | |
|     Defendants. § | |

**PLAINTIFFS' SUR-REPLY IN SUPPORT OF PLAINTIFFS' SECOND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Plaintiffs Hilda Gonzalez Garza and Rosbell Barrera ("Plaintiffs") respectfully submit this Sur-Reply in Support of Plaintiffs' Second Emergency Application for Temporary Restraining Order. For the reasons more fully set forth below, Defendants' Second Response to Plaintiffs' Second Emergency Application for Temporary Restraining Order does not overcome Plaintiffs' challenges to the Starr County Building and Property Use Policy ("Policy") and Electioneering Regulations.

For example, Defendants' many assertions of "compelling interests" – including their newly-asserted interest of protecting against "damage to the greens" (*see* Dkt. 46 at ¶ 18) – are insufficient because Defendants' policies are not narrowly tailored to serve any of those purported interests and are unconstitutionally overbroad. Defendants also promise to cure specific constitutional deficiencies identified by Plaintiffs to date. *See id*. at ¶ 20 (Defendants "can assure the Court that the County will begin the process of designating the Starr County Veterans Memorial and Cemetery as a public space."). Defendants' promised piecemeal

1

revisions to the County's unconstitutional policies are insufficient to remedy Plaintiffs' harm and, in fact, affirm the need for injunctive relief.

Plaintiffs respectfully request that the Court enjoin the County from implementing or enforcing the provisions of the Policy and Electioneering Regulation as set out in Plaintiffs' Proposed Order. *See* Dkt. No. 36-5.

## ARGUMENT

### A. Plaintiffs' Claims Are Ripe for the Court's Consideration

Defendants argue that Plaintiffs' challenge to the Policy is not ripe for review until the County denies Plaintiffs a permit application to use County property. *See* Dkt. 46 at ¶ 7. However, a plaintiff may challenge a regulation of speech that involves a permit application process "regardless of whether he or she was denied a permit, or whether one has ever been sought." *Fernandes v. Limmer*, 663 F.2d 619, 625 (5th Cir. 1981); *see also Lamar Outdoor Advert., Inc. v. Mississippi State Tax Comm'n*, 701 F.2d 314, 316, n. 1 (5th Cir. 1983) ("Laws restraining First Amendment rights may be challenged by those who allege a desire to engage in the proscribed or regulated activities although they have not yet done so.").[1] That is particularly true here, where the Policy prohibits speech and assembly on certain County properties (such as the Starr County Cemetery) and Plaintiffs cannot even apply to use those properties. Therefore, Plaintiffs' claims are properly before the Court.[2]

---

[1] None of the cases Defendants cite concern permits or, more broadly speaking, First Amendment issues. Those cases merely stand for the general proposition that a case must be ripe for the Court's consideration.

[2] Defendants do not appear to argue that Plaintiffs' challenges to the Electioneering Regulation are not ripe for consideration. To the extent Defendants make that argument, the claim must also fail for the same reasons Plaintiffs' challenges to the Policy are ripe.

### B. Defendants Concede the Policy Prohibits All Speech and Assembly on Some Properties but Fail to Explain How Such an Absolute Ban is Constitutional

With respect to Plaintiffs' likelihood of success on the merits, Defendants do not dispute that, under Section 3(b) of the Policy, Plaintiffs are wholly prohibited from speaking or assembling on all County properties that are not listed in Attachments A-D of the Policy or specifically identified in the Policy. *See* Dkt. No. 46 at ¶ 20.[3] Instead, Defendants simply state that their sweeping ban on speech and assembly is justified because of "security concerns." *Id*. As the Supreme Court has made clear, however, security concerns do not justify Defendants' total prohibition of speech. *See Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987) (holding that even in nonpublic fora, such as an airport, a total ban on speech runs afoul of the First Amendment "because no conceivable governmental interest would justify such an absolute prohibition of speech.").

### C. Defendants' Piecemeal Attempts to Cure Constitutional Defects as Plaintiffs Raise Them in This Litigation Weigh in Favor of a Preliminary Injunction

Defendants miss the mark by providing property-by-property justifications for their speech ban in response to Plaintiffs' challenge to Section 3(b). *See, e.g.,* Dkt. No. 46 at ¶ 20 (noting that the County "has been unable to confirm whether or not the Falcon County Party [sic] is subject to County control" and promising to "begin the process" of designating the Starr County Veterans Memorial and Cemetery as a "public space."). Plaintiffs merely provided a list of properties by way of example of the unconstitutional overbreadth of Section 3(b). Defendants' promise to cure the policy with respect to those individual properties does not address the claims in this case. *See Jews for Jesus, Inc.*, 482 U.S. at 575; *see also See Janvey v. Alguire*, 647 F.3d 585, 595-96 (5th Cir. 2011) (for preliminary injunctive relief, all that is required is that Plaintiffs present a prima facie case). Furthermore, at this stage of the litigation,

---

[3] Defendants also concede that the term "use" under the Policy includes electioneering activities. *Id*. at ¶ 11.

Plaintiffs should not bear the burden of determining whether properties not identified in the Policy are properties owned by Starr County.

Indeed, the County's piecemeal attempt to cure its policies' constitutional deficiencies weighs in favor of a preliminary injunction.  It was only after Plaintiffs filed their first Emergency Application for Temporary Restraining Order that Defendants acknowledged the electioneering ban adopted by the Starr County Commissioners' Court in January 2018 was an unconstitutional policy that could not be enforced.  Tr. 2-26-2018 at 99:21-25 (Defendant Omar Escobar:  "The original [electioneering] order does have its issues, obviously . . . I would have to agree with the Court, attempting to enforce the first order is going to be difficult.").  Now, after Plaintiffs identified further constitutional infirmities in their Second Emergency Application for Temporary Restraining Order, Defendants promise the Court they will cure some of these constitutional problems.  *See* Dkt. No. 46 at ¶ 20 (promising to "begin the process" of designating the Starr County Veterans Memorial and Cemetery as a "public space."). Defendants' response weighs heavily in favor of Plaintiffs' requested relief.  As explained by the U.S. Supreme Court:

> If the promulgation of overbroad laws affecting speech was cost free . . . then legislatures would have significantly reduced incentive to stay within constitutional bounds in the first place. When one takes account of those overbroad statutes that are never challenged, and of the time that elapses before the ones that are challenged are amended to come within constitutional bounds, a substantial amount of legitimate speech would be chilled"

*Osborne v. Ohio*, 495 U.S. 103, 120–21 (1990) (internal quotation marks and citations omitted).

### D. Defendants' Interpretation of the Policy's Holiday Ban Contradicts the Plain Language of That Policy

Defendants argue that it would be "absurd" to construe the Policy to prohibit speech on all County property on County holidays.  *See* Dkt. No. 46 at ¶ 15.  However, that assertion

4

contradicts the plain text of Section 3(d) of the Policy, which unequivocally states: "County facilities are not available for use on County holidays." *See* Dkt. No. 36-2, Ex. A-1, § 3(d); *see also id.* at § 3(a) (defining "buildings" and "facilities" to include "structures and surrounding property belonging to Starr County, including, but not limited to, formal meeting spaces, porticos, and greens.").

Without providing any reasoning, Defendants suggest that this holiday ban applies only to properties subject to a permit requirement. *See* Dkt. No. 46 at ¶ 15. There is no basis for that conclusion. First, Section 3(d) of the Policy, which contains the holiday ban, makes no reference to permits and does not distinguish between different types of County property. *See* Dkt. No. 36-2, Ex. A-1, § 3(d). Defendants' suggestion that the holiday ban does not extend to all County property is therefore contrary to the plain reading of the Policy. Second, Section 3, titled "Use of County Property," is not limited to properties for which a permit is required; indeed, that section contains the provision that prohibits speech and assembly on properties not listed in the Policy, such as the Starr County Cemetery. *Id.* § 3(b). Like Sections 1 and 2, Section 3 is a provision of general applicability to all County property.

Plaintiffs agree that a ban on speech on all County property on County holidays is "absurd," but that is the policy the County has written and adopted. To find otherwise, contrary to the plain text of the Policy, would constitute quintessentially legislative work. *See United States v. Stevens*, 559 U.S. 460, 481 (2010) ("We will not rewrite a . . . law to conform it to constitutional requirements . . . for doing so would constitute a serious invasion of the legislative domain . . . and sharply diminish [the policymaker's] incentive to draft a narrowly tailored law in

5

the first place.") (internal quotation marks and citations omitted); *City of El Cenizo, Texas v. Texas*, 890 F.3d 164 (5th Cir. 2018) (same).[4]

### E.  The Policy and Electioneering Regulation are not Narrowly Tailored

Defendants do not contest that both the Policy and Electioneering Regulation must be narrowly tailored (*see* Dkt. No. 46 at ¶¶ 11, 25); instead, they cite to a long list of "compelling interests," including their newly asserted interest in protecting against "damage to the greens," to justify their sweeping policies. *See id.* at ¶¶ 16, 18, 26-29. However, Defendants fail to explain how the County's policies are narrowly tailored to serve any of those purported interests.

For example, Defendants concede that, under the Policy, Plaintiffs must pay a $50 deposit and after-hours fees, sign a release of liability, and notarize an application to use any of the properties in Attachment A of the Policy—such as the lawns of the Courthouse and grassy areas of El Cenizo—and some County parks after hours, regardless of the nature of the speech or whether the use occurs during a voting period. *See id.* at ¶ 17. However, they argue that this "simple process cannot be considered a burden" given the County's purported interests. *Id*. This argument must fail because the standard is not limited to whether the County has an interest in regulating speech; in public fora such as lawns and grassy areas, a content-neutral regulation must be narrowly tailored to achieve significant government interests, and in nonpublic fora, the regulation must still be reasonable. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983); *see also Warren v. Fairfax Cty.*, 196 F.3d 186, 189 (4th Cir. 1999).  The County does not explain how its Policy is narrowly tailored or whether it is overbroad or chills constitutionally protected speech. *See Serafine v. Branaman*, 810 F.3d 354, 364 (5th Cir. 2016).

---

[4] Defendants also suggest sidewalks and parks should be carved out of the holiday ban because Section 12 excludes these fora from the permitting process. *See* Dkt. No. 46 at ¶ 15.[4]  However, Defendants' reading is not a reasonable construction of the Policy.  No provision supports the County's contention that Section 3 is not a provision of general applicability to all County property.

For the reasons more fully set forth in Plaintiff's Memorandum of Law in Support of Plaintiffs' Second Emergency Application for Temporary Restraining Order, the County's Policy is neither narrowly tailored nor reasonable and is overbroad. See Dkt. No. 36-1 at 18-26.[5]

As best as Plaintiffs can discern, Defendants' sole argument for why the Electioneering Regulation is narrowly tailored is that the County "allow[s] electioneering on sidewalks that run parallel to public passageways that would not obstruct access to polling locations." Dkt. No. 46 at ¶ 28. This argument must fail for at least three reasons:

- First, this argument does not explain why the County must forbid electioneering in public spaces where other speech (e.g. religious or other political speech) is permitted.

- Second, this argument does not explain why the Electioneering Regulation prohibits electioneering outside the voting period. See Dkt. No. 36-2, Exh. A-8, § 4(a).

- Third, the argument does not address the lack of narrow tailoring in polling places such as La Victoria-Zarate Park, where *no* areas are designated for electioneering purposes and where electioneering is therefore wholly prohibited. See Dkt. No. 36-2, Exh. A-8.

For these reasons and the additional reasons set forth by Plaintiffs in their Memorandum of Law in Support of Plaintiffs' Second Emergency Application for Temporary Restraining

---

[5] Defendants' sole attempt to address their lack of narrow tailoring is that although the Policy does not allow "unattended signs to be posted or deposited on County property" it excludes "holding and distributing material from such a prohibition." See Dkt. No. 46 at ¶ 19. That argument is contrary to the plain text of the Policy. First, the Policy makes no mention of a prohibition of "unattended" signs; the Policy prohibits "[d]epositing or posting . . . flyers . . . signs . . . or other literature" on all County property. See Dkt. No. 36-2, Ex. A-1, § 9(e). Second, the exception of "holding and distributing material" is in Section 12, which exclusively covers sidewalks and some County parks. *Id*. at § 12(c). Defendants did not include that exception for any other type of County property, *e.g.*, areas on County property that Plaintiffs may use if they apply for a permit such as the Courthouse lawns and steps, the Zarate Park Community Center, and the grassy areas surrounding El Cenizo. The distinction between Sections 9(e) and 12(c) makes clear that the Policy prohibits "holding and distributing" flyers, signs, and literature in all County property that does not constitute a public space. Indeed, the Electioneering Regulation defines "posting" as "display[ing] a political sign, including attaching or affixing it to a surface [or] *holding it by hand*." *Id*., Exh. A-8 § 2(d) (emphasis added). That definition gives further weight to the conclusion that Defendants contemplate "holding or distributing material" to be included in the definition of "posting" unless that conduct is specifically carved out of the definition of "posting." Therefore, the Policy is not narrowly tailored.

Order, the Electioneering Regulation is not narrowly tailored and is unconstitutionally overbroad. *See* Dkt. No. 36-1 at 21-22, 26.[6]

### F. Defendants Do Not Contest That the Policy Unconstitutionally Provides Unbridled Discretion to a Single Individual

The County does not contest that the Policy provides unbridled discretion to the Starr County Judge to accept or deny applications. In fact, Defendants double down on their grant of unfettered power to a single individual to permit or deny Plaintiffs from speaking. See, e.g. Dkt. No. 46 at ¶ 17 ("[t]he County Judge, who is the ultimate authority of the County's executive branch, reviews applications.") It is well-established that such a grant of authority without any guiding standards is unconstitutional. The U.S. Supreme Court rejected a similar policy, reasoning:

> For in deciding whether or not to withhold a permit, the members of the Commission were to be guided only by their own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience.' This ordinance as it was written, therefore, fell squarely within the ambit of the many decisions of this Court over the last 30 years, holding that a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional.

*Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 150-51 (1969). *See also Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992) ("A government regulation that allows arbitrary application is inherently inconsistent with a valid time, place, and manner regulation.").

---

[6] In support of their argument, Defendants cite to a Supreme Court case where the Court found that a particular sidewalk on property owned by the U.S. Postal Service was not a traditional public forum and therefore, the regulation did not need to be narrowly tailored. *See U.S. v. Kokinda*, 497 U.S. 720, 727-28 (1990) (holding that the sidewalk at issue, which "was constructed solely to provide for the passage of individuals engaged in postal business," was not traditional public fora). However, that case specifically distinguished *U.S. v. Grace*, which involved public sidewalks adjacent to the Supreme Court and which this Court has already found are indistinguishable from the sidewalks of the Starr County Courthouse. *See United States v. Grace*, 461 U.S. 171, 183 (1983); Dkt. No. 18 at 18 ("Of concern . . . to the Court, is that the common areas include sidewalks along the perimeter of the County Courthouse, indistinguishable from the sidewalks forming the perimeter of the U.S. Supreme Court grounds, and found to constitute traditional public fora in United States v. Grace.").

## G. The Policy and Electioneering Regulation Violate the Texas Election Code and the Commissioners' Court Acted *Ultra Vires*

Defendants' arguments that neither the Electioneering Regulation nor the Policy violates the Texas Election Code contradict the plain text of the County's policies.

Defendants argue that in polling places, the Policy only prohibits electioneering outside the 100-foot marker on parking lots and in the form of "staking signs into the Courthouse grounds, nothing more." *See* Dkt. No. 46 at ¶ 22. However, the plain language of the Policy is an unconstitutional prior restraint on speech, including in grassy areas and lawns, and therefore not a reasonable time, place, and manner regulation.

Moreover, the Electioneering Regulation prohibits electioneering outside the 100-foot marker on public fora such as sidewalks and parks. *See* Dkt. No. 36-2, Exhibit A-8. That content-based prohibition, which extends beyond the voting period (*see id*. at § 4(a)), is not a reasonable time, place, and manner regulation.[7]

Defendants' conduct constitutes *ultra vires* activity because the Texas Election Code specifically states that Starr County cannot unreasonably prohibit electioneering outside the 100-foot marker, TEX. ELEC. CODE ANN. § 61.003(a-1), and Defendants' Electioneering Regulation does precisely that -- it prohibits electioneering outside the 100-foot marker.

---

[7] Defendants cite to Election Advisory Opinion No. 2017-14, issued by the Texas Secretary of State, in support of their prohibition of speech on sidewalks and other public fora. Dkt. No. 46 at ¶ 31. However, Defendants' reliance on the advisory is misplaced. The advisory states:

> Only a court of law can determine what is reasonable in terms of time, place and manner. However, an example of a reasonable regulation may include prohibiting electioneering on sidewalks or driveways to keep them clear for pedestrians and traffic. Finally, we recommend that all regulations be content neutral.

Election Advisory No. 2017-14, Texas Secretary of State, https://www.sos.state.tx.us/elections/laws/advisory2017-14.shtml (last visited June 1, 2018). Contrary to the recommendation in the Advisory Opinion, the County enacted the Electioneering Regulation, which is a content-based restriction that extends beyond the voting period. Defendants' response cherry picks a sentence in the Advisory, then presents it out of context.

### H. Plaintiffs Will Continue to Suffer Irreparable Harm if Injunctive Relief is Not Granted

Defendants argue that Plaintiffs cannot show they have suffered any injury. Dkt. No. 46 at ¶ 33. However, Plaintiffs have shown that the County has enforced its policies and Plaintiffs' speech has been curtailed. *See* Dkt. No. 36-1 at 27-28. Plaintiffs will continue to suffer that harm unless the Court enjoins Defendants from enforcing the Policy and Electioneering Regulation.

### I. An Injunction Will Not Disserve the Public Interest

Finally, Defendants claim an injunction will harm the public because the County will be unable to preserve the health and welfare of its citizens, and they note that other Texas counties have enacted similar policies. Dkt. No. 46 at ¶ 34. However, it is well-established that "injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013).

The fact that other counties similarly have enacted policies restricting freedom of speech does not mean the Starr County regulations are reasonable or pass constitutional muster. *Cf. Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 131–32 (2d Cir. 2017) ("The reasonable care standard will not countenance an industry-wide 'race to the bottom' to set the least demanding standard to assess [its] conduct.") (internal citation and quotation marks omitted).

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order enjoining the County from implementing or enforcing the provisions of the Policy and Electioneering Regulation as set forth in Plaintiffs' Proposed Order. *See* Dkt. No. 36-5.

Dated: June 4, 2018                                     Respectfully submitted,

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
By: */s/ Nina Perales*
Nina Perales
State Bar No. 24005046
SDTX Bar No. 21127
nperales@maldef.org
Celina Moreno
State Bar No. 24074754
SDTX Bar No. 2867694
cmoreno@maldef.org
Alejandra Ávila
State Bar No. 24089252
SDTX Bar No. 2677912
aavila@maldef.org
110 Broadway, Suite 300
San Antonio, TX 78205
Tel: (210) 224-5476
Fax: (210) 224-5382

**TEXAS CIVIL RIGHTS PROJECT**
By: */s/ Efrén C. Olivares*
Efrén C. Olivares
State Bar No. 24065844
SDTX Bar No. 1015826
efren@texascivilrightsproject.org
Rebecca Harrison Stevens
State Bar No. 24065381
beth@texascivilrightsproject.org
1017 W. Hackberry Ave.
Alamo, Texas 78516
Tel: (956) 787-8171

Attorneys for Plaintiffs HILDA GONZALEZ GARZA and ROSBELL BARRERA

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has electronically submitted a true and correct copy of the above and foregoing via the Court's electronic filing system on the 4th day of June, 2018, which will serve a copy on all counsel of record for Defendants.

*/s/ Alejandra Ávila*
Alejandra Ávila

11