# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| HILDA GONZALEZ GARZA AND | § | |
| ROSBELL BARRERA, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:18-CV-00046 |
| | § | |
| STARR COUNTY, TEXAS; | § | |
| OMAR ESCOBAR, in his official capacity | § | |
| as District Attorney for the 229th Judicial | § | |
| District; VICTOR CANALES JR., | § | |
| in his official capacity as County Attorney | § | |
| for Starr County; ELOY VERA, in his | § | |
| official capacity as County Judge for | § | |
| Starr County; JAIME ALVAREZ, in his | § | |
| official capacity as Starr County | § | |
| Commissioner for Precinct 1; RAUL PEÑA, | § | |
| III, in his official capacity as Starr County | § | |
| Commissioner for Precinct 2; ELOY GARZA, | § | |
| in his official capacity as Starr County | § | |
| Commissioner for Precinct 3; RUBEN D. | § | |
| SAENZ, in his official capacity for Starr | § | |
| County Commissioner for Precinct 4; | § | |
| RENE "ORTA" FUENTES, in his official | § | |
| capacity as Sheriff for Starr County. | § | |
| | § | |
| Defendants. | § | |

## FIFTH AMENDED COMPLAINT

Plaintiffs HILDA GONZALEZ GARZA, ROSBELL BARRERA, and MARIO
MASCORRO JR. ("Plaintiffs") bring this civil rights action against Starr County, Texas and
various Starr County officials (collectively "Defendants" or "Starr County") for declaratory and
injunctive relief.

## INTRODUCTION

1.      This Fifth Amended Complaint challenges Starr County's policy of prohibiting speech on county property, including new regulations adopted on June 25, 2018.  Starr County maintains a far-reaching property use policy and supplemental electioneering regulations in violation of the First Amendment to the U.S. Constitution and the Texas Election Code.  The County began with a January 8, 2018 order banning electioneering on all county property (the "January Electioneering Order") and has subsequently added to and revised its speech restrictions three times.  Nevertheless, the County's speech restrictions remain unconstitutional and illegal.

2.      Defendants' revised Building and Property Use Policy, adopted on June 25, 2018 (the "Policy" or "June 25 Policy"), is a policy that applies year-round and requires Plaintiffs GARZA and BARRERA to undergo a burdensome permit application process if they wish to speak or assemble peaceably on six identified county properties, including the County Courthouse lawns and grassy areas and community centers.  *See* Policy §§ 3(b), 6, Attach. B(xii).  The Policy prohibits Plaintiff MASCORRO from applying for a permit because he is under the age of 21.  *Id.* § 6(d).  Defendants' Policy also prohibits Plaintiffs from exercising their First Amendment rights on these six county properties during county holidays, including Election Day, *id.* § 3(e), and from placing campaign signs on the lawns of the courthouse, and on sidewalks, parks, and other grassy areas, even for short periods of time and outside the voting period.  *Id.* §§ 9(e), 12(c), Attachment B(i)(b).

3.      The County's electioneering regulations, revised on June 25, 2018 (the "Electioneering Regulation") are content-based restrictions on speech and assembly that prohibit

electioneering on areas in county property such as sidewalks, lawns, and grassy areas outside the 100-foot perimeter under the Texas Election Code.

4.      Plaintiffs are residents and registered voters of Starr County.  Plaintiff HILDA GONZALEZ GARZA is an active member of the Democratic Party in Starr County.  Plaintiff ROSBELL BARRERA is a politically active member of the Republican Party in Starr County. Plaintiff BARRERA is also a retired Colonel of the U.S. Army who regularly participates in activities on county property honoring veterans and their families during Memorial Day and Veterans Day.  Plaintiff MASCORRO is a politically active resident of Starr County who is 19 years old and running for office as an independent candidate in the November 2018 election. Plaintiffs have engaged and plan to continue to engage in protected speech and peaceable assembly now banned or limited by the County.  Plaintiffs challenge the June 25 Policy and Electioneering Regulation because both unconstitutionally restrict Plaintiffs' rights to free speech and peaceably to assemble and are unlawful under state law.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over Plaintiffs' causes of action arising under the Constitution of the United States pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 1983.

6.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

7.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of Texas, the judicial district in which the parties reside and where a substantial part of the events or omissions giving rise to the claims occurred.

# PARTIES

*Plaintiffs*

8.      Plaintiff HILDA GONZALEZ GARZA is a resident and registered voter of Starr County.  She is a politically active member of the Democratic Party.  Plaintiff GARZA ran for Democratic Party Precinct Chair for Starr County Precinct No. 10 in the 2018 primary election. She electioneered on county-owned property during the 2018 primary elections and the May 2018 Texas Democratic Party runoff elections, and intends to electioneer on county-owned property during the voting periods for the November 6, 2018 general election and future elections.

9.      Plaintiff ROSBELL BARRERA is a resident and registered voter of Starr County.  He serves as the chairman of the Starr County Republican Party.  Plaintiff BARRERA intends to electioneer on county-owned property during the voting periods for the November 6, 2018 general election and future elections.  Plaintiff BARRERA is also a retired Colonel of the U.S. Army and a life member of the Veteran of Foreign Wars, a nonprofit veterans' service organization.  For nearly two decades, Plaintiff BARRERA has organized and participated in Memorial Day and Veterans Day services on Starr County property.  Plaintiff BARRERA participated in these activities on May 28, 2018 (Memorial Day) and intends to do so on November 12, 2018 (Veterans Day), as well as in future years.

10.     Plaintiff MARIO MASCORRO JR. is a 19-year-old resident and registered voter of Starr County.  Plaintiff MASCORRO is running as an independent candidate for Star County Commissioner for Precinct No. 2 in the November 6, 2018 election.  Plaintiff MASCORRO wishes to electioneer on county-owned property, including community centers and the Courthouse lawns, but he cannot do so under the Policy.  Unlike other candidates, Plaintiff MASCORRO cannot verbally advocate for himself, hold town halls, or meet and greet voters on

4

county property such as the Courthouse lawns or community centers every day of the year. Plaintiff MASCORRO learned about enforcement of the Policy and Electioneering Regulation during the March 2018 and May 2018 elections and fears that if he electioneers on county-owned property, he will be fined or arrested for violating the Policy and Electioneering Regulation.

### *Defendants*

11.     Defendant STARR COUNTY is a county organized under the laws of the State of Texas.

12.     Defendant ELOY VERA is the County Judge of Starr County.  He presides over the Starr County Commissioners' Court, which enacted the January Electioneering Order, the Policy and the Electioneering Regulation.  He carries out budgetary and policy making functions of county government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

13.     Defendant JAIME ALVAREZ is the Starr County Commissioner for Precinct 1.  He is a member of the Starr County Commissioners' Court, which enacted the January Electioneering Order, the Policy and the Electioneering Regulation.  He carries out budgetary and policy making functions of county government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

14.     Defendant RAUL PEÑA, III is the Starr County Commissioner for Precinct 2.  He is a member of the Starr County Commissioners' Court, which enacted the January Electioneering Order, the Policy and the Electioneering Regulation.  He carries out budgetary and policy making functions of county government, including the calling and holding of

elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

15.     Defendant ELOY GARZA is the Starr County Commissioner for Precinct 3.  He is a member of the Starr County Commissioners' Court, which enacted the January Electioneering Order, the Policy and the Electioneering Regulation.  He carries out budgetary and policy making functions of county government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

16.     Defendant RUBEN D. SAENZ is the Starr County Commissioner for Precinct 4.  He is a member of the Starr County Commissioners' Court, which enacted the January Electioneering Order, the Policy and the Electioneering Regulation.  He carries out budgetary and policy making functions of county government, including the calling and holding of elections.  He sets policy to provide and maintain all county buildings and facilities.  He is sued in his official capacity.

17.     Defendant RENE "ORTA" FUENTES is the Sheriff for Starr County.  He serves as a licensed peace officer and oversees, directs, and controls the Starr County Sheriff's Office, which is charged with the enforcement of criminal laws, including trespassing offenses involving Starr County property.  He is responsible for enforcing the January Electioneering Order, the Policy and the Electioneering Regulation.  He is sued in his official capacity.

18.     Defendant VICTOR CANALES, JR. is the County Attorney for Starr County.  He is responsible for prosecuting misdemeanor criminal cases in Starr County, assists law enforcement officials with criminal investigations, and provides legal advice to the Starr County Commissioners' Court and other county elected officials.  He is also responsible for enforcing

6

the January Electioneering Order, the Policy and the Electioneering Regulation.  He is sued in his official capacity.

19.     Defendant OMAR ESCOBAR, JR. is the District Attorney for the 229th Judicial District, which includes the counties of Duval, Jim Hogg and Starr.  He is responsible for prosecuting felony criminal cases in Starr County and assists law enforcement officials with criminal investigations.  He is also responsible for enforcing the January Electioneering Order, the Policy and the Electioneering Regulation.  He is sued in his official capacity.

20.     At all times relevant hereto, Defendants were and have been acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Texas and Starr County, Texas.

## FACTUAL ALLEGATIONS

### *Defendants Adopted an Unconstitutional Electioneering Order and Building and Property Use Policy*

20.     On January 8, 2018, the Starr County Commissioners' Court adopted the January Electioneering Order.  The January Electioneering Order constituted an official policy and practice of Starr County.

21.     In a February 12, 2018 meeting, the Starr County Commissioners' Court adopted a Building and Property Use Policy ("February Policy"), which incorporated the January Electioneering Order.

22.     On February 26, 2018, the U.S. District Court for the Southern District of Texas declared Defendants' January Electioneering Order unconstitutionally vague.  The Court explained that the January Electioneering Order "is a document that expresses only the desires of the county and it contains no language actually adopting any order or rule" and that if the January Electioneering Order "were actually something enforceable it would be *ultra vires*."

7

23.     Two days later, on February 28, 2018, the Court issued a written decision partially granting Plaintiffs' Emergency Application for a Temporary Restraining Order.

24.     The Court also enjoined Section 13 of the February Policy in its entirety.

25.     Section 13 of the February Policy required Plaintiffs to apply for a permit to use all "common areas" on county property.  "Common areas" as defined in the February Policy included all county property except for the parking lots on the five county properties listed in the Policy.

26.     Prior to the Court's injunction, Christina Adkins, Legal Director of the Texas Secretary of State Elections Division, emailed Plaintiff GARZA, stating that:

> Section 61.003 of the Texas Election Code specifically states that any entity that owns or controls a public building that is used as a polling place cannot prohibit electioneering on the premises.  The resolution from Starr County appears to prohibit electioneering entirely, not just provide regulations as to the time, place, and manner of electioneering.  It appears as though this would be in conflict with 61.003 (a-1) of the code.

27.     On February 15 and February 20, 2018, Sam Taylor, the Communications Director of the Secretary of State's Office publicly echoed Ms. Adkins' comments, stating:  "The election code is very clear that [Defendants] may not ban or prohibit at any time electioneering on the building's premises outside of that 100-foot mark," and although the County "may enact reasonable regulations concerning the time, place and manner of electioneering . . . a reasonable regulation is not an outright ban."  Mr. Taylor's statements were published by *The Monitor* and *KRGV Channel 5 News*.

### *Prior to the Court's Injunction, Defendants Enforced Their Speech Restrictions During the Early Voting Period for the March 2018 Primary Election Cycle*

28.     Each election cycle, Starr County residents assemble and electioneer on county property during the voting period.  Residents post and hold up signs, distribute brochures,

verbally advocate for propositions and candidates, display car bumper stickers, and wear campaign t-shirts, among other electioneering activities.

29.     For years, Plaintiffs have electioneered peacefully and advocated for policies, political parties, and candidates of their choice.  Plaintiffs regularly wear t-shirts supporting their candidates of choice, hold up political signs, distribute campaign brochures, provide information to voters about candidates, and answer any questions from voters and neighbors about those candidates.

30.     Plaintiffs have assembled peaceably and engaged in these electioneering activities during the voting period on county property, including in parking lots and park areas, on sidewalks, and outside polling places.

31.     When assembling and electioneering at polling places, Plaintiffs remain beyond the 100-foot distance from the outside door as required by the Texas Election Code.

32.     Campaign workers, volunteers, and politically-active residents also wear and display political signage during election season at non-polling locations owned by Starr County. For example, campaign workers travel to vote-counting locations such as the County Courthouse Annex and display political signs, wear political t-shirts, and park vehicles with political displays or bumper stickers.

33.     During the 2018 primary election voting periods, Plaintiff HILDA GONZALEZ GARZA engaged in her regular electioneering activities including, but not limited to, wearing t-shirts with political messaging in support of Democratic candidates, distributing ballot information and copies of the U.S. Constitution to voters, encouraging people to vote, and displaying political bumper stickers on her car.  Plaintiff GARZA assembled and engaged in

these activities on county property, including at polling places beyond the 100-foot marker as permitted by the Texas Election Code.

34.     As a candidate running in the 2018 primary election for Precinct Chair for Starr County Precinct No. 10, Plaintiff HILDA GONZALEZ GARZA also stood outside of polling places (beyond the 100-foot marker) distributing sample ballots to voters and asking voters to cast their ballot for her.

35.     On February 20, 2018, the first day of early voting in the March 2018 primary election, Starr County Elections Director John Lee Rodriguez directed at least one Starr County employee and at least one Starr County official with political bumper stickers or displays on their vehicles to remove their vehicles from the Courthouse parking lot or cover their political displays.  Those vehicles were parked at the Starr County Courthouse beyond the 100-foot marker.

36.     On February 20, 2018, Plaintiff HILDA GONZALEZ GARZA arrived at the Starr County Courthouse intending to electioneer.  After she arrived, Plaintiff GARZA saw one of her former high school classmates, who works at the Courthouse, walking quickly in the parking lot toward her former classmate's car, which was located beyond the 100-foot zone. Plaintiff GARZA's friend told Plaintiff GARZA that Starr County Elections Director John Lee Rodriguez had directed Plaintiff GARZA's former classmate either to move her car or cover up the bumper sticker on the rear window of her car.  The bumper sticker advocated for the former classmate's brother, a candidate for Starr County Treasurer.

37.     Also on February 20, 2018, a Justice of the Peace, who also works at the Courthouse, approached Plaintiff HILDA GONZALEZ GARZA and asked her if she would help him cover up his re-election campaign displays on the two back side windows of his truck.  His

Case 7:18-cv-00046 Document 63 Filed on 05/23/18 in TXSD Page 12 of 30

truck was parked beyond the 100-foot marker. The Justice of the Peace told Plaintiff GARZA that Starr County Elections Director John Lee Rodriguez had directed him to cover up the campaign displays on the car. Plaintiff GARZA helped the Justice of the Peace cover up the political displays on his truck so that he would not have to move his truck out of the parking lot.

38.     After Plaintiff HILDA GONZALEZ GARZA helped the Justice of the Peace cover up the political displays on his truck, she left the County Courthouse parking lot because she feared arrest under the electioneering ban as a result of her electioneering activities and having political bumper stickers on her car. Plaintiff GARZA had originally intended to be present and electioneer at the County Courthouse all day.

39.     On February 24, 2018, Plaintiff HILDA GONZALEZ GARZA again went to the County Courthouse intending to electioneer. Plaintiff GARZA spoke to a candidate who stood on the sidewalk beyond the 100-foot marker. The candidate told Plaintiff GARZA that the Sheriff's Office had asked the candidate to leave the parking lot earlier that day because she was wearing a political t-shirt.

40.     Also on February 24, 2018, while Plaintiff GARZA was standing on the sidewalk outside the 100-foot marker wearing a t-shirt in support of a candidate, two Starr County Deputy Sheriffs approached Plaintiff GARZA and told her to leave, pointing to her t-shirt. No county officials asked a friend of Plaintiff GARZA, who was also standing on the sidewalk but was not wearing a political t-shirt, to leave. Neither Plaintiff GARZA nor her friend had applied for a permit under the County's Policy.

Case 7:18-cv-00046   Document 58-1   Filed in TXSD on 08/16/18   Page 13 of 30

### *Following the Court's Injunction, Defendants Continued to Enforce the February 12, 2018 Policy on Primary Election Day*

41.     On March 6, 2018, at the El Cenizo polling location, residents wishing to electioneer on the grassy areas and sidewalks at El Cenizo were asked by the Starr County Sheriff's Office to leave the property.

42.     Sergeant Armando Treviño advised Sheriff Deputy Esmeralda Muñiz, who was at the El Cenizo polling location on March 6, 2018, that no one was permitted to electioneer on the El Cenizo property.   As a result, Deputy Muñiz told the residents who had assembled there to leave.   Deputy Muñiz was not aware of the Temporary Restraining Order by the Starr County Sheriff's Office.   Deputy Muñiz subsequently allowed residents to stand on the lawns and grassy areas of the property after Plaintiff GARZA informed her of this Court's February 28, 2018 Temporary Restraining Order.

### *Following the Court's Injunction, Defendants Adopted a New, Flawed Policy and an Unconstitutional Electioneering Regulation*

43.     At its April 9, 2018 meeting, the Starr County Commissioners' Court adopted a revised Building and Property Use Policy ("April 9 Policy").   The Commissioners' Court adopted the April 9 Policy without public discussion.   The Policy constituted an official policy and practice of Starr County.

44.     On May 9, 2018, the Commissioners' Court adopted a supplemental set of electioneering regulations ("May 9 Electioneering Regulation").   The Commissioners' Court adopted the May 9 Electioneering Regulation without public discussion.

45.     The April 9 Policy and the May 9 Electioneering Regulation restricted all exercise of First Amendment rights during county holidays on all county property, even in parks and on sidewalks, imposed a burdensome permit application process for use of six different county

properties, and forbid electioneering on areas in county property such as sidewalks, lawns, and grassy areas outside the 100-foot perimeter under the Texas Election Code.

46.     Plaintiffs filed a third amended complaint on May 20, 2018 and a second emergency application for a Temporary Restraining Order on May 21, 2018.


### *Defendants Adopted a Further Revised, but Still Flawed Policy*

47.     At its June 25, 2018 meeting, and only as a result of months of litigation, the Commissioners' Court once again revised its policies and adopted the June 25 Policy.

48.     The Policy constitutes an official policy and practice of Starr County.

49.     The Policy regulates public use of all county property.

50.     The Policy is not limited to use of county property during a voting period.

51.     The term "use" under the Policy includes use for purposes of electioneering and assembling peaceably.

52.     Electioneering includes verbal advocacy for a particular candidate, measure, or political party.  Pursuant to the Texas Election Code, electioneering also includes the posting, use, or distribution of political signs or literature.

53.     Any violation of the Policy will result in removal from the premises and prosecution "to the fullest extent of the law."  Policy § 9(a).

54.     The Policy "supersedes previously enacted policies concerning the use of Starr County buildings and property."  *Id.* § 13.  However, the Policy states that all policies "not in conflict with the provisions of [the Policy] shall remain in full force and effect."  *Id.* § 14.

### *The Policy Imposes a Burdensome Application Process to Speak and Assemble on County Property*

Case 7:18-cv-00046 Document 58-1 Filed in TXSD on 08/16/18 Page 15 of 30

55.     The Policy imposes a burdensome permitting process on local residents who seek to use "buildings and facilities" in Attachment A to the Policy.

56.     Attachment A lists the following six properties:  Starr County Courthouse, Starr County Fairgrounds, El Cenizo Park Community Center, La Rosita Library, Starr County Annex Conference Room, and Zarate Park Community Center.

57.     The Policy defines "buildings and facilities" as "includ[ing] structures and surrounding property belonging to Starr County."  *Id.* § 3(a).  This definition includes county property such as greens and lawns surrounding county buildings, including lawns of the County Courthouse.

58.     To use these buildings and facilities, Plaintiffs must comply with onerous requirements.  For example, a person who wishes to apply for a permit must complete a three-page Request for Use of Starr County Facilities.

59.     To apply for a permit, the applicant must be at least 21 years of age, state the purpose for which the county property will be used, sign a release of liability, and have the applicant's signature notarized by a Texas notary public.  *Id.* § 6(b), (d).

60.     The applicant must pay a deposit of $50.00 to apply to speak or assemble on any county property listed in Attachment A.  *Id.* § 8(b).  An application deposit "may be refunded" 14 days after the scheduled use of the facility.  *Id.*  A permit application is "not valid until all fees are paid."  *Id.* § 6(b).

61.     The Policy also imposes after-hour fees of $25 per hour for use of county property in Attachment A after regular working hours, *i.e.*, Monday through Friday from 8:00 a.m. to 5:00 p.m. *Id.* § 8(a).

62.     Under the Policy, Defendant ELOY VERA is the buildings and facility manager.

63.     Applications must be submitted to Defendant ELOY VERA "not less than thirty (30) days prior to the intended use date." *Id.* § 6(c). Therefore, Plaintiffs cannot protest an ordinance adopted by the County on the Courthouse lawns, for example, until Defendant ELOY VERA approves Plaintiffs' application and Plaintiffs apply at least thirty days before their planned use of the Courthouse lawns.

64.     Despite this permitting process, the County restricts certain First Amendment activities on county-owned property altogether, including posting signs on greens, grassy areas, sidewalks, and parks. *Id.* §§ 9(e), 12(c).

*The Policy Prohibits Individuals Under the Age of 21 from Exercising Their First Amendment Rights on County Property*

65.     The Policy forbids people under the age of 21 from speaking or assembling on county-owned property listed in Attachment A, including the Courthouse lawns, community centers, conference rooms, and La Rosita Library, every day of the year. *Id.* § 6(d), Attach. A.

66.     Unlike other Starr County residents who may apply for a permit, Plaintiff MASCORRO, who is 19 years old, cannot apply for a permit at all, and therefore cannot speak or assemble on county-owned property. The Policy forbids Plaintiff MASCORRO from advocating for himself and talking to voters any day of the year on county-owned property.

*The Policy Grants Unfettered Discretion to the Commissioner's Court*

67.     The Policy fails to establish a consistent process for securing permits. For example, the Policy grants Defendant ELOY VERA the unfettered discretion to "determine a specific deposit amount for use of the County Courthouse" which can range from $0 to $1,000. *Id.* §§ 6(c), 8(b).

68.     The Policy also does not provide sufficient parameters and grants too much discretion to the Commissioners' Court to grant or deny permits. The Policy states that

15

properties listed in Attachment A may be used only "for events that support a public purpose, benefit, service, training, or interest to Starr County residents." *Id.* § 3(a). However, the Policy does not define "public purpose, benefit, service, training, or interest to Starr County residents."

69.     The Policy grants Defendant ELOY VERA the discretion to waive use fees "if he determines that the County is receiving fair value by allowing the use of its facilities." *Id.* § 8(e). The Policy does not define the parameters of what constitutes fair value.

70.     The Policy provides that all users "may be required to have a licensed peace officer, or Starr County contracted security services, at their event." *Id.* § 9(h). The Policy does not specify under what circumstances these services "may be required" by the County or who is responsible for making this determination.

71.     The Policy provides that "[t]he Commissioners' Court retains the right to waive or modify any of the requirements of this Policy" when it determines that the waiver and/or modification:  is necessary in order to serve the public interest, will allow use which will continue to meet the intent of this Policy, and will not violate any applicable statutory requirements. *Id.* § 2(c).

72.     Under the Policy, the Commissioner's Court may impose additional restrictions and regulations for approved use of the Courthouse "on a case by case basis." *Id.*, Attachment B(xii)(a). The Policy does not specify the additional restrictions or regulations or the process by which they are imposed.

73.     Although the county properties in Attachment A are available for private citizen use if residents apply for a permit, the Policy prohibits certain categories of speech.  For example, the display of some category of signs, such as personal notices, community event

announcements, and funeral announcements, is prohibited at the Starr County Courthouse "except in areas designated by the Commissioners' Court." *Id.* at Attachment B(vi).

74.     The Policy also prohibits residents from posting signs on county grounds, even temporarily, including in grassy areas, parks, sidewalks, and lawns. *Id.* § 9(e), 12(c).  Therefore, the Policy prevents residents from posting election signs with wire legs in the grassy areas outside polling places, for example.  It also prohibits posting of political signs in public fora such as parks and sidewalks, even for short periods of time and outside the voting period.  In contrast, the Policy allows the placing of chairs, tables, tents, and grills in county property such as parks and sidewalks. *Id.* § 12(e).

75.     The Policy's permit requirements for use of county property in Attachment A apply regardless of whether areas in these properties are located outside the 100-foot marker under the Texas Election Code.

*The Policy Bans Speech and Assembly on County Holidays in Certain County Property*

76.     The Policy prohibits residents from reserving and receiving a permit for use of County property listed in Attachment A on County holidays, including Election Day. *Id.* § 3(e).

77.     The Policy states that "County facilities are not available for reservation and permitting on County holidays," and if the holiday falls on a Monday or Friday, "the weekend preceding or the weekend following the holiday" is considered a holiday as well. *Id.*

78.     Election Day, November 6, 2018, is a county holiday.

79.     Other county holidays include Memorial Day (May 28, 2018), Independence Day (July 4, 2018), Labor Day (September 3, 2018), and Veterans Day (November 12, 2018).

*The Policy's Parking Lot Speech Prohibition Extends Beyond Parking Lots*

80.     The Policy prohibits speech and assembly in Parking Lots and Parking Zones.  It states that only "county or government vehicles serving an official purpose" and "passenger vehicles" are authorized in Parking Lots and Parking Zones.  *Id.* § 11(iii).

81.     The Policy's restrictions on areas designated as Parking Lots and Parking Zones apply year round and outside County business hours.

82.     The Policy's Attachment D shows maps of the following parks and other county properties:  the Starr County Courthouse, El Cenizo, La Rosita Commissioner Precinct #1, Starr County Courthouse Annex, Clemente Alaniz Garceno Park, La Rosita Park, Escobares Park, Salineno Park, Roma Community Park, Lino & Eloy Zarate Park, Alto Bonito Park, La Casita Park, Fort Ringgold Park, Starr County San Antonio St. Park, and Abel N. Gonzalez Park.

83.     On these maps, red lines delineate the boundaries of what the County appears to designate as Parking Zones.  The maps also bear a mark of "PZ" or "Parking" in red ink.

84.     In some cases, the red markings delineate sidewalks, streets, and unpaved or grassy areas on or adjacent to county parks.

### *The County Adopted a Further Revised, but Still Unconstitutional Electioneering Regulation*

85.     On June 25, 2018, the Commissioners' Court adopted the revised June 25 Electioneering Regulation.

86.     The Electioneering Regulation constitutes an official policy and practice of Starr County.

87.     The Electioneering Regulation provides rules for electioneering activities.  It does not similarly prohibit or restrict other categories of speech, such as commercial solicitation, artistic speech, non-election political speech or religious speech.

88.     As a result, the Electioneering Regulation prohibits electioneering within 15 feet of the curb of a fire station driveway, but it does not similarly prohibit other speech and assembly in those areas in county property.   Electioneering Regulation § 4(i).   The Electioneering Regulation prohibits electioneering on any driveway of county property, but it does not similarly prohibit other categories of speech and assembly in these areas.   *Id*. § 4(j).   The Electioneering Regulation makes it unlawful for "electioneering activities to distract the attention or obstruct the vision of drivers," but does not similarly prohibit other categories of speech and assembly.   *Id*. § 4(l).   The Electioneering Regulation makes it unlawful "to place or post political signs in public easements or rights-of-way," but it does not similarly prohibit signs expressing other types of speech.   *Id*. § 4(m).

89.     The Electioneering Regulation prohibits electioneering on county property not marked as one of the Designated Areas for Electioneering.   Exhibit A shows maps of four county properties titled La Rosita, La Victoria, the Starr County Courthouse, and El Cenizo.

90.     The Electioneering Regulation designates certain areas on these polling places for electioneering activities ("Designated Areas for Electioneering").

91.     Each map in Exhibit A of the Electioneering Regulation shows different areas marked in green and a legend that identifies each green area as an "Electioneering Area."

92.     The Electioneering Regulation designates the following areas on county property as Designated Areas for Electioneering with green markings:  parts of a parking lot at La Rosita; parts of sidewalks surrounding the County Courthouse; and strips of paved areas near El Cenizo.

93.     There are no Designated Areas for Electioneering at La Victoria.

94.     No lawns or grassy areas, even outside the 100-foot marker, are labeled Designated Areas for Electioneering in any of the four attached maps.

Case 7:18-cv-00046   Document 58-1   Filed in TXSD on 08/16/18   Page 21 of 30

95.     Portions of sidewalks outside the 100-foot marker at the Starr County Courthouse are not labeled Designated Areas for Electioneering.

96.     At a public Commissioners' Court meeting, Defendant CANALES, JR. stated that the Electioneering Regulation "overlaps with [the County's] Property Use Policy" and electioneering "is prohibited everywhere where you don't see the green" in the attached maps in Exhibit A.

97.     Similarly, Defendant ESCOBAR stated that "certain sidewalks will not be used for electioneering . . . ."

***Plaintiffs are Injured by the June 25 Policy and Electioneering Regulation***

98.     Plaintiff HILDA GONZALEZ GARZA has been denied the right to electioneer outside the 100-foot marker as permitted by the Texas Election Code, and she has observed others being denied that right during the voting period.  Plaintiff GARZA fears Defendants will fine or arrest her if she assembles peaceably or electioneers during the November 6, 2018 general election or future elections.

99.     Plaintiff GARZA further fears that Defendants will cite or arrest her when she assembles peaceably and engages in speech at the County Courthouse lawns and parking lot, including at a candlelight vigil or public gathering, about issues of concern to her such as child abuse and drug use.

100.    Plaintiff HILDA GONZALEZ GARZA also visits County-owned properties in addition to the County Courthouse.   Plaintiff GARZA fears Defendants will cite or arrest her if she assembles peaceably or engages in speech on matters of concern such as health care access, on county property.

101.   Plaintiff ROSBELL BARRERA's electioneering activities include wearing t-shirts promoting his preferred candidates and political party and peaceful leafletting.  Plaintiff ROSBELL BARRERA also advocates for candidates of his choice on county property during voting periods.  For example, on election night, Plaintiff ROSBELL BARRERA assembles and electioneers at the County Courthouse lawns and parking lot and at the Starr County Courthouse Annex, where votes are tabulated.  Plaintiff ROSBELL BARRERA fears arrest and prosecution under the June 25 Policy and Electioneering Regulation for assembling peaceably and electioneering on county property.

102.   Plaintiff MARIO MASCORRO JR.'s electioneering activities include meeting and greeting voters, handing out campaign materials, posting signs, and promoting his platform, including outside the voting period.  Plaintiff MASCORRO also posts signs promoting his candidacy.

103.   Plaintiff MASCORRO informs other County residents of and raises awareness about issues affecting Starr County.  For example, he has vocally criticized how the County has handled the drainage system.

104.   Plaintiff MASCORRO wishes to engage in these activities on county property, including the Courthouse sidewalks and lawns and community centers, but is prohibited from doing so under the Policy and Electioneering Regulation.  Plaintiff MASCORRO fears arrest and prosecution under the June 25 Policy and Electioneering Regulation for engaging in these activities on county property.

105.   Plaintiffs regard assembling peaceably and electioneering as part of their civic duty and will continue to assemble and electioneer on county property during the voting periods for the November 6, 2018 general election and future elections.

106.    Plaintiffs fear that if they assemble peaceably and electioneer on county property, they will face arrest or other punishment under the June 25 Policy and Electioneering Regulation.

107.    In the many years in which Starr County residents have electioneered and assembled peaceably on county property, county governmental operations have not been disrupted.  Similarly, there have been no health or safety problems caused by assembling peaceably and electioneering.

108.    Peaceable assembly and electioneering activities on county property allow voters to learn more about the candidates, share their views and make informed decisions on how to cast their ballots.

109.    In the many years that Plaintiffs have engaged in these activities, they have not observed intimidation or harassment of voters on property owned by Starr County beyond the 100-foot marker.

110.    Plaintiff BARRERA participates in non-electioneering activities involving matters of public concern, particularly activities involving veterans, on county property, including lawns and greens.

111.    Since approximately 1990, for example, Plaintiff BARRERA has planned, coordinated, and participated in events honoring veterans during Memorial Day and Veterans Day, both County holidays, on Starr County property, including at the Starr County Cemetery in Rio Grande City, Texas.  Among other activities, Plaintiff BARRERA has been a guest speaker, participated in gun salutes, and sung the national anthem during services on those County holidays.

112.    Plaintiff BARRERA fears that if he engages in those activities on county property, particularly lawns and greens, he will face arrest and punishment.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Starr County's June 25 Policy and Electioneering Regulation Abridge Plaintiffs' Free Speech Rights in Violation of the U.S. Constitution**

113.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs of this Fifth Amended Complaint as though fully set forth here.

114.    The First Amendment to the U.S. Constitution provides: "Congress shall make no law . . . abridging the freedom of speech[.]"

115.    The free speech guarantee of the First Amendment is made applicable to the states through the Fourteenth Amendment, which provides "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

116.    Defendants' June 25 Policy and Electioneering Regulation abridge political speech that lies at the core of the protections afforded by the First Amendment.

117.    Defendants' June 25 Policy and Electioneering Regulation are not narrowly tailored to serve a compelling government interest.

118.    Defendants' June 25 Policy and Electioneering Regulation are not reasonable time, place, and manner regulations of protected speech.

119.    Defendants' June 25 Policy and Electioneering Regulation are unconstitutionally overbroad.

120.     Defendants' June 25 Policy and Electioneering Regulation are unconstitutionally vague.

## SECOND CAUSE OF ACTION

**Starr County's June 25 Policy and Electioneering Regulation Abridge Plaintiffs' Rights to Assemble Peaceably in Violation of the U.S. Constitution**

121.     Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs of this Fifth Amended Complaint as though fully set forth here.

122.     The First Amendment to the U.S. Constitution provides: "Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble[.]"

123.     The First Amendment right peaceably to assemble is made applicable to the states through the Fourteenth Amendment, which provides "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

124.     Defendants' June 25 Policy and Electioneering Regulation abridge Plaintiffs' rights peaceably to assemble.

125.     Defendants' June 25 Policy and Electioneering Regulation are not narrowly tailored to serve a compelling government interest.

126.     Defendants' June 25 Policy and Electioneering Regulation are not reasonable time, place, and manner regulations of Plaintiffs' right peaceably to assemble.

127.     Defendants' June 25 Policy and Electioneering Regulation are unconstitutionally overbroad.

128.     Defendants' June 25 Policy and Electioneering Regulation are unconstitutionally vague.

## THIRD CAUSE OF ACTION

### Starr County's June 25 Policy and Electioneering Regulation Violate the Equal Protection Clause of the U.S. Constitution

129.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs of this Fifth Amended Complaint as though fully set forth here.

130.    The Fourteenth Amendment to the U.S. Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

131.    Defendants' June 25 Policy and Electioneering Regulation violate the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution because they infringe on Plaintiff MASCORRO's fundamental right to freedom of speech and to peaceably assemble on the basis of his age.

132.    Defendants' June 25 Policy and Electioneering Regulation are not narrowly tailored to serve a compelling government interest.

## FOURTH CAUSE OF ACTION

### Starr County's June 25 Policy and Electioneering Regulation Violate § 61.003 of the Texas Election Code

133.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs of this Fifth Amended Complaint as though fully set forth here.

134.    Texas Election Code § 61.003(a-1) provides that "[t]he entity that owns or controls a public building being used as a polling place may not, at any time during the voting period, prohibit electioneering on the building's premises outside of the area [within 100 feet of

an outside door of a polling place], but may enact reasonable regulations concerning the time, place, and manner of electioneering."

135.    Starr County is subject to Section 61.003 of the Texas Election Code.

136.    Defendants' June 25 Policy and Electioneering Regulation violate Section 61.003(a-1) of the Texas Election Code, which prohibits electioneering within 100 feet of the door of a polling place and requires jurisdictions like Starr County to permit electioneering beyond the 100-foot zone subject to reasonable time, place and manner regulations.

137.    Defendants' June 25 Policy and Electioneering Regulation are not reasonable time, place and manner regulations under Section 61.003 of the Texas Election Code.

## FIFTH CAUSE OF ACTION

**Starr County's June 25 Policy and Electioneering Regulation Constitute *Ultra Vires* Activity**

138.    Plaintiffs re-allege and incorporate by reference the allegations contained in the previous paragraphs of this Fifth Amended Complaint as though fully set forth here.

139.    Under Texas law, an *ultra vires* suit may be brought against government officials acting without legal authority or failing to perform a purely ministerial act.

140.    Defendants are responsible for the administration of elections in Starr County, Texas and enforcement of laws related to elections.  Texas law both constrains Defendants' election authority and prescribes specific, ministerial acts for election administration that Defendants must perform.

141.    The Starr County Commissioners have acted without legal authority by adopting a policy and regulations expressly prohibited by Texas Election Code § 61.003 and by expressing an intention to enforce the June 25 Policy and the Electioneering Regulation.   The actions by the Commissioners' Court are undertaken without legal authority and are *ultra vires*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1.     A declaratory judgment that the June 25 Policy and Electioneering Regulation adopted by the Commissioners' Court, in their entirety, violate Plaintiffs' rights to free speech and peaceably to assemble as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution;

2.     A declaratory judgment that the permit provisions of the June 25 Policy, including section 6(d), adopted by the Commissioners' Court violate the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution because they infringe on Plaintiff MASCORRO's First Amendment rights on the basis of his age;

3.     A declaratory judgment that the June 25 Policy and Electioneering Regulation adopted by the Commissioners' Court violate Section 61.003 of the Texas Election Code;

4.     A declaratory judgment that the June 25 Policy and Electioneering Regulation adopted by the Commissioners' Court are *ultra vires*;

5.     A declaratory judgment that the January Electioneering Order adopted by the Commissioners' Court is unconstitutionally vague, of no force and effect, and *ultra vires*, as preliminarily held by this Court on February 26, 2018;

6.     An injunction prohibiting Defendants and their officials, employees, and agents from implementing or enforcing the June 25 Policy, the June 25 Electioneering Regulation, or the January Electioneering Order;

7.    An order awarding Plaintiffs reasonable costs and attorneys' fees under 42
U.S.C. § 1988 and any other applicable law; and

8.    Such other and further relief as this Court deems just and proper.

Dated: August 16, 2018          Respectfully submitted,

**MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND**
By: */s/ Nina Perales*
Nina Perales
State Bar No. 24005046
SDTX Bar No. 21127
nperales@maldef.org
Celina Moreno
State Bar No. 24074754
SDTX Bar No. 2867694
cmoreno@maldef.org
Alejandra Ávila
State Bar No. 24089252
SDTX Bar No. 2677912
aavila@maldef.org
110 Broadway, Suite 300
San Antonio, TX 78205
Tel: (210) 224-5476
Fax: (210) 224-5382

**TEXAS CIVIL RIGHTS PROJECT**
By: */s/ Efrén C. Olivares*
Efrén C. Olivares
State Bar No. 24065844
SDTX Bar No. 1015826
efren@texascivilrightsproject.org
Rebecca Harrison Stevens
State Bar No. 24065381
beth@texascivilrightsproject.org
1017 W. Hackberry Ave.
Alamo, Texas 78516
Tel: (956) 787-8171

28

Attorneys for Plaintiffs HILDA GONZALEZ
GARZA and ROSBELL BARRERA

### Certificate of Service

The undersigned counsel hereby certifies that, on the 16th day of August, 2018, she electronically submitted a true and correct copy of the above and foregoing Fifth Amended Complaint via the Court's electronic filing system, which will serve a copy on all counsel of record for Defendants.

*/s/ Alejandra Ávila*
Alejandra Ávila